**Florence WATTELS, Respondent,**

**v.**

**A. J. MARRE and Lillian Marre, d/b/a Marre's Tavern, Appellants.**

No. 45418.

Supreme Court of Missouri, Division No. 1.

May 13, 1957.

Rehearing Denied June 10, 1957.

Alexander & Robertson, L. A. Robert-son and Ernest E. Baker, St. Louis, for appellants.

Morris A. Shenker, Bernard J. Mellman, St. Louis, for respondent.

DALTON, Chief Justice.

Action for damages for personal injuries alleged to have been sustained by plaintiff when she fell on a step in defendants' tavern and broke her hip. Verdict and judgment were for plaintiff for $15,000. On motion for a new trial, the trial court found the verdict excessive by $3,500 and, upon plaintiff entering a remittitur in that sum, judgment was entered for plaintiff for $11,500. Defendants' motion for a new trial was overruled and defendants appealed.

The cause was submitted on defendants' alleged negligence in failing to have remedied or warned of the dangerous and unsafe condition of the step upon which plaintiff slipped and fell. Defendants have assigned error (1) on the court's failure to direct a verdict in their favor at the close of all the evidence; and (2) on the giving of plaintiff's instruction No. 1.

We shall state the evidence favorable to plaintiff and disregard defendants' evidence, unless it aids the plaintiff's case, since, on motion for a directed verdict, the plaintiff is entitled to all of the evidence in her favor and all the favorable inferences therefrom.

Defendants operated a tavern and restaurant at 6115 Easton Avenue in the City of St. Louis. The location is also referred to as in the Wellston loop. Plaintiff, age 68 years, and her grandson, age 12 years, entered the dining room of the restaurant about 7 p. m., on December 11, 1954, by way of a glass panel door, from the sidewalk on the east side of the building. She took about two and one-half steps forward and immediately turned to her left to go through an open seven foot archway into the tavern portion of the building. She intended to go to the steam table and look over the food and get something to eat. As she passed through the center of the archway,

"about middle ways of the step," her foot "just slipped right off of the step." The floor of the tavern was lower than the floor of the dining room with a step between. Plaintiff fell on her left hip fracturing the bone and sustaining serious injuries.

Plaintiff had never been in the tavern before. She did not see the step, nor know that one was there. There was not enough light for her to discern the color of the floor. The light was "very dim." She further said that, as she entered the dining room, she was looking up at the walls and noticed "the lights, and there wasn't hardly any lights, * * * they were dim." She did not see the lights themselves, "just the reflection. A very dim light in front of me." She "was wearing Cuban heels— good substantial Cuban heels—wide at the bottom." When she turned to her left, she looked straight ahead, facing the bar in the tavern portion of the building and she could see the steam table. She said that she did look down at the floor, but said "I don't remember the step." As she stepped through the archway her left foot "slid right off the step." She testified: "All at once I slipped, and that's all I know. It was done pretty quick. * * * I just slipped, and that's all there was to it. I found myself laying on the floor. * * * You see, my foot is about half way over there—you see. If it hadn't been slick, my foot would have held, but it rolled right off, and when it did, it turned, and then I fell right over on my left side.

"Q. You say your foot was half way over the step? A. Just about right at the bottom of my foot.

"Q. You mean part of your foot was sticking out in space beyond the step when you put your foot down? A. That's right. And when I turned, it rolled right off. * * *

"Q. There wasn't anything there—on there, except the steps themselves, that you fell on, was there? A. Just the worn step. That's all. It was slick. And that's all. * * *

"Q. How did your foot go off? A. Well, when I made the step, it went to rolling and slid right off just like it was slanting.

"Q. Is that the way it was? A. That's right." She "didn't step off," but "slipped off" and pitched sideways. She didn't see any foreign substance on the step or any moisture. Plaintiff's grandson had entered the outside door immediately in front of her, but, when she was once inside the dining room, she didn't see him any more.

James Albert Smith, 51 years of age, a son of plaintiff, was in the tavern standing at the bar, within about 9 feet of the step in question, when his mother and son entered the dining room. He saw his mother fall. He testified: "I saw it. Just walked right along there, and off she went * * just as she got to the edge * * * of the rise, or step, you refer to, her foot kind of slipped, and she pitched sideways," twisted and landed on her hip, part of her hit the end of the steam table. "The condition of the step had been the same all the time. It was slick, as you come in." The condition of the paint "wasn't too bright." The step was dark. "It was dark on top of the steps." As to marks painted on top of the step—the tread, he said "none to the west wall, but up to the east wall there's a marker there, * * * sort of an orange yellow." Plaintiff faced west as she entered. As to the condition of the light in the area, he said: "Well, it was very dim in that part of the area, that is, the end of the steam table there." The television was in front of the bar.

Plaintiff's grandson also testified that the "condition of the light," was "pretty poor" when he entered the door with his grandmother, that, "it was dark," but there was some light. He was not able to determine whether there was any difference between the color of the step and the color of the floor. He had a little difficulty getting down the step himself. He stepped off, because he didn't see the step, although he had been there before. Other evidence

tended to show that the step had been installed and in use in the tavern since 1935. One of defendants' witnesses said the step was "a light brown. * * * It's brown material, terrazzo."

Plaintiff's witness George H. Stimson, an engineer, made an inspection of the tavern and restaurant on February 5, 1955, after plaintiff's fall on December 11, 1954. He did not observe any warning signs located in the vicinity of the archway and step in question. The tavern occupied the south or front portion of the building, with the cafeteria along the east wall. A seven foot archway in the rear wall of the tavern opened into a dining room. There was "one step up between the two rooms." Persons purchasing food in the front portion of the establishment carried it in a tray into the dining room in the rear. The step had "one riser of seven inches." The riser was painted yellow. There was paint against each side of the archway against the ends of the riser. "This step * * * the walking surface of the floor * * * the tread that you would step upon was a terrazzo, pink in color." It was made of marble chips with a cement in it. He said it was customary and good practice to round off the nose of the tread "to a very small degree * * * so you don't have a sharp corner," to prevent cracking. The flooring of the cafeteria and barroom was made of a ceramic tile, with ten inch squares, white and black, like a checkerboard. The floor of the dining room was of a terrazzo material, white, beige and black chips. He did not observe any border. The difference in color, indicating a difference in materials, would give a contrast in appearance to a person walking over the step, if they were looking at it and conscious of it.

There was a difference in the texture of the flooring of the two rooms. "The pink terrazzo step, due to wear, or traffic and wear from feet over the years, has been worn quite smooth, and it is more slippery than either the terrazzo floor in the dining room or that tile floor in the bar room." He said that this statement, that it was more slippery, was "based upon the fact that there is a difference in texture of the two materials as a result of wear and tear."

The east outside door of the dining room was hinged at its north side and the distance between the east wall and the east side of the archway was 2.74 feet. The tread of the step was 1.23 feet wide. Use of the step over a long period of time had worn it smooth and worn it down at the front edge toward the bar and cafeteria. As an engineer, the witness said he was of the opinion that the amount of wear he observed would not be possible within a year prior to his examination. He took measurements to determine the amount of the wear—the maximum wear was apparent over the front two inches of the step, that is, from the front edge of the step to two inches back. Measuring at one foot intervals from the west wall of the archway along the edge, "the drop at one foot was one-half inch. At two feet, nine-sixteenths. At three feet, nine-sixteenths. Four feet, one-half. Five feet, one-half. Six feet, one-quarter inch. And seven feet, one-quarter inch. * * * One inch back from the nose or edge of the step at the west wall, the reading was zero. At one foot, it was slightly over an eighth of an inch. At two feet, one-eighth inch. At three feet, one-eighth. Four feet, five-sixteenths. Five feet, one-sixteenth. Six feet, zero. And seven feet, zero." From the measurements he had taken, it would be fair to describe this general area of the step, "as being sort of gouged out within an area near the nose of the step and two inches back from it, and concave toward the center." At two inches back from the edge the wear was less. "The tread of the step, that is, the flat part that you walk upon, had at each end the remnants of some yellow paint similar to the traffic paint that we see on the curbing of the street." He made his inspection in the daytime, in the forenoon, and observed "the location of lights in the general area of the steps." "The lighting in both the dining room and the bar and cafeteria area was from fluorescent light tubes and fixtures at the ceiling." In the

dining room the nearest light fixture was fourteen and one-half feet away—horizontal distance, and the ceiling was ten and one-tenth feet in height. In the bar and cafeteria the ceiling light was three and one-half feet away horizontally and the ceiling was eleven and four-tenths feet above the floor.

In support of the assignment that the court erred in refusing to direct a verdict for defendants at the close of all the evidence, defendants-appellants contend that plaintiff's evidence fails to make a case for the jury because she failed "to prove that there was a defect in the premises, and that she did not know and, by the exercise of ordinary care, would not have known of such defect in time to avoid injury."

In submitting the cause, plaintiff submitted a finding in the conjunctive of a defective step and inadequate lighting as the basis for a finding of a dangerous and unsafe step and she submitted in the disjunctive a finding of negligence in failing to remedy the dangerous condition or to adequately warn of its presence and condition.

While appellants admit that plaintiff submitted her case on the theory that she was a business invitee on defendants' premises and that defendants owed her the duty to remedy or warn of defects in the premises, known to them and not obvious or known to her, the appellants argue that plaintiff produced no evidence that *the step* could not be seen by the exercise of ordinary care, and they insist that plaintiff offered evidence tending to show that "the step was obvious to anyone in the exercise of ordinary care." Appellants further say that there was no substantial evidence of inadequate lighting; and that, if there was inadequate lighting, the plaintiff knew of it when she entered the premises and assumed the risk due to the darkened condition, because it was obvious and known to her.

Appellants do not here contend that there was no defect in the step, nor do they take the position that the defect, if any, in the step was obvious to anyone in the exercise

of ordinary care. They refer to the presence of the step and the condition of the light as obvious. Appellants do say that plaintiff tried her case on the theory that the step was dangerous because of the darkened condition of defendants' premises and they insist that her evidence on this issue was insufficient and amounted to no more than mere conclusions. Appellants point to the testimony of plaintiff's son that (as he stood 9 feet from the step) he saw his mother and son enter the premises. From this evidence appellants infer the light was sufficient for him to recognize them and for plaintiff to see the step. No mention is made of its defective condition. Reference is also made to the fact that, after plaintiff fell, her grandson, who entered with her, could see her feet from a short distance away and said he saw her foot partly on the step as she slipped and fell. Appellants also refer to plaintiff's evidence as to the location of light fixtures on the premises, but appellants rely on defendants' evidence as to the power and number of lights and on defendants' evidence to the effect that the step was well lighted. Appellants cite three cases, Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303, 305; Phelps v. Stewart, Mo.App., 187 S.W.2d 69, 72; Peck v. Yale Amusement Co., Mo.Sup., 195 S.W. 1033, 1034.

In the Lindquist case, plaintiff fell on the fourth step while descending a stairway, which she had ascended the same day. The steps were worn, but not slick, polished or slippery. Clearly plaintiff knew of their presence and apparently of their condition but she relied upon a " 'defective condition of the stairs in combination with improper lighting thereof'." While she saw and testified to the presence of lights over the stairs, she said they gave a shadowy and dim light, but she had no difficulty getting around for lack of light. Her witness also "could see very plainly going about the stairway and had no difficulty getting about the store." The court held there was no substantial evidence of failure to exercise ordinary care in lighting the stairway.

In the Phelps case the sole negligence charged was negligence in lighting the step on which plaintiff fell. Her evidence failed to show that "the lights were insufficient to enable customers in the exercise of ordinary care *to observe the step* in passing over it." (Italics ours.) The court said that even plaintiff's evidence showed the lights were sufficient for that purpose. No defect or lurking danger in the step were shown. It was painted white, while the floors were dark. No question of a defective step was involved.

In the Peck case, plaintiff, a 60 year old woman, left her seat and fell on a step in the gallery of a combined vaudeville and moving picture show, apparently, while "the pictures were still running." Plaintiff's evidence gave a meager and unintelligible explanation of the accident and disclosed no negligence as to the room, floor or steps being out of repair. Although, plaintiff said it was "dark", her witnesses testified to the presence of lights, which "burned continuously", and "evidently lighted about as picture show rooms are lighted." The evidence did not "show a condition different from what might be required in a picture show room." The court held that no negligence on account of the absence of lights was shown. No defective condition of the step was shown. The cases cited do not aid appellants on the issue as to the submissibility of the case before us.

Plaintiff, upon entering the premises of defendants to purchase food at their restaurant and tavern, occupied the status of an invitee and the defendants were bound to exercise ordinary care to maintain their premises in a reasonably safe condition for plaintiff's use. Cameron v. Small, Mo.Sup., 182 S.W.2d 565, 567; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723, 726(2). The basis of defendants' liability as possessors of land for injuries sustained by their invitees, is defendants' superior knowledge of an unreasonable risk of harm of which the invitee does not or in the exercise of ordinary care would

not know. Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756, 758(4). Defendants as owners and operators of the tavern and restaurant were, of course, not liable for injuries resulting from open and obvious conditions which were known or should have been known to plaintiff-invitee, as well as to the defendants and, in such circumstances, there is no duty to warn because the invitee has the information which would be conveyed by a warning. Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 393; Douglas v. Douglas, supra; Cameron v. Small, supra.

We think the plaintiff's evidence entirely sufficient to show that the step in question here was worn, smooth, slick, slippery and dangerous, particularly, to one that did not know of its existence and was not anticipating the presence of a step at that location. The jury could find that plaintiff had never been on the premises before and that, although she looked, she did not see or know of the presence of the step; that the front two inches of the step were so worn that, over a portion of the front edge of the step, thère was something like a one-half inch drop or slant in the front two inches; that the riser of the step was painted yellow in order to warn persons approaching from the front or south side, but that the top of the step was of brown material. There were no warning signs to give notice of the presence of the step and no yellow paint on the top or tread of the step or at the west end of the step, and there was only the remnants of some yellow paint near the edges of the archway to warn persons approaching the step from the dining room. The jury could find from the evidence that, although plaintiff did look down at the floor, yet in view of the existing conditions as to floor color and lighting she would not have observed the step or noted its condition in the exercise of ordinary care for her own safety; and that, except for the worn, slick and slippery condition of the edge of the step she would not have fallen. Clearly, the condition of the floor, including the

tread of the step, was not of such a character to have readily attracted the attention of plaintiff who had the right to assume that the premises were being maintained in a reasonably safe condition for the uses and purposes for which they were intended. Murphy v. S. S. Kresge Co., Mo.App., 239 S.W.2d 573, 580.

■ Since the defective condition of the step was submitted in the conjunctive with inadequate lighting we need not determine whether there was such substantial evidence of inadequate lighting as to authorize the submission of the cause on that basis alone. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 98(12). Corley v. Kroger Grocery & Baking Co., 355 Mo. 4, 193 S.W.2d 897, 900. Nor need we determine whether such inadequacy of light and danger therefrom was obvious to plaintiff, or whether the evidence shows that such inadequacy of lighting had existed for a sufficient time for defendants to have known thereof and to have remedied said condition. The evidence of the defective condition of the step and its general appearance and the general circumstances shown were sufficient to sustain the finding submitted, to wit, that the step was dangerous and unsafe. The issue of negligence in failing to have remedied a dangerous and unsafe condition of the step was submitted in the disjunctive with negligence in failing to warn of the presence and condition of the step. Appellants do not question the sufficiency of the evidence to support a finding that the dangerous and unsafe condition of the step (resulting from wear) had existed for a sufficient time for defendants in the exercise of ordinary care to have known thereof and to have remedied the dangerous condition, or to have warned plaintiff of its presence and condition.

In the case of Winters v. Hassenbusch, Mo.App., 89 S.W.2d 546, 550, it was held that the evidence offered was sufficient to show that the light on a stairway in an office building was so dim that a defective metal strip, which was worn, ragged and projected upward for one-half to three-quarters of an inch, created a dangerous condition to plaintiff-invitee unfamiliar with the building who tripped and was injured while using the stairs in the exercise of ordinary care. The court said: "The evidence does not show that it was pitch dark at the place in question. There is ample in the evidence on the part of the two witnesses in question together with the testimony of plaintiff, herself, tending to show that the light was dim thereat and of such a nature that a jury could say that a dangerous condition was presented, at least as to a stranger using the stairs in the exercise of ordinary care."

Considering the evidence in a light most favorable to plaintiff, we must and do hold that the court did not err in refusing to direct a verdict for defendants at the close of all the evidence.

■ Appellants assign error on the giving of instruction No. 1 and contend (1) that it directed a verdict for plaintiff upon "a finding that plaintiff was not aware of the step" and "without requiring the jury to find that plaintiff would not have known of the defect by the exercise of ordinary care"; (2) that "it requires defendants to give warning of unknown defects even though they were obvious"; (3) that it told the jury "to find for plaintiff even though the defect was obvious and plaintiff could have known of the alleged defect by the exercise of ordinary care" and it, therefore, conflicted with instruction No. 3,. which told "the jury that if plaintiff knew of the defect by the exercise of ordinary care plaintiff could not recover"; and (4) that plaintiff submitted her right to recover in the disjunctive on the duty to remedy the defect in the premises or to warn of the dangerous condition, and that the submission was erroneous, because "the danger was due to the alleged darkness of the premises, and there was no evidence showing that defendants had actual or constructive knowledge of the darkened condition in time to remedy same by the exercise of ordinary care in time to prevent plaintiff's injury."

The instruction submitted a finding, in part, as follows: "that there was a step, the east side of which was approximately two or three feet toward the left of said door and that said step had become worn, sloped and slippery and that said step was located in an area that was dark, dim and not adequately lighted so as to enable plaintiff to see and discern the presence and condition of said step and that plaintiff was not aware thereof, if you so find, and if you further find that, by reason of the above circumstances, said step was dangerous and unsafe and that said danger had existed for sufficient time that defendants, in the exercise of ordinary care, could have known thereof in time to have remedied said dangerous condition or to have given plaintiff adequate warning of the presence and condition of said step, but that defendants failed so to do, then you are instructed that defendants were negligent, and if you further find that as a direct result of said negligence, if so, plaintiff was caused to fall and be injured while she was exercising such care as an ordinarily careful and prudent person would exercise under similar circumstances, then you are instructed * *."

We think the instruction sufficiently required a finding "that plaintiff would not have known of the defect by the exercise of ordinary care." As a condition to a verdict for plaintiff the instruction did require a finding "that said step was located in an area that was dark, dim and not adequately lighted so as to enable plaintiff to see and discern the presence and condition of said step and that plaintiff was not aware thereof" and it subsequently required a finding that plaintiff was caused to fall while exercising such care as an ordinarily careful and prudent person would exercise under similar circumstances. A verdict for plaintiff was not directed on a mere finding that plaintiff was not aware of the step. Nor did the instruction require "defendants to give warning of unknown defects even though they were obvious." The findings submitted were to the contrary. Nor do we find any conflict between instruction No. 1 and defendants' instruction No. 3. Clearly, if the defect was obvious or plaintiff could have known of the defect by the exercise of ordinary care, she could not recover under the terms of instruction No. 1. The instruction sufficiently required a finding as to the exercise of care, that she did not know of the step and that the step was "not adequately lighted so as to enable plaintiff to see and discern the presence and condition of said step."

Concerning appellants' final complaint as to instruction No. 1, we agree that plaintiff submitted her right to recover on the basis of defendants' negligence in failing to remedy the defect in the premises or to warn of the dangerous condition; and that these issues were submitted in the disjunctive, however, plaintiff's evidence did not limit the danger to the darkness of the premises, although inadequate lighting was attempted to be shown as an existing circumstance. We have previously called attention to the fact that the matter of the defective step and inadequate lighting were submitted in the conjunctive and the evidence was sufficient to make a case for the jury on a defective and dangerous step and failure to warn of its presence and condition. The instruction was not therefore reversibly erroneous whether or not plaintiff's evidence was sufficient to authorize a submission of the case on inadequate lighting alone. Corley v. Kroger Grocery & Baking Co., supra. We hold that the instruction was not prejudicially erroneous and the court did not err in giving it.

The judgment is affirmed.

All concur.