Emma WILKINS, Plaintiff-Appellant,

v.

ALLIED STORES OF MISSOURI, d/b/a Peck's of Kansas City, Defendant-Respondent.

No. 46044.

Supreme Court of Missouri,
Division No. 1.

Jan. 13, 1958.

E. A. (Bert) Taylor, Donald E. Raymond, John C. Russell, Kansas City, for appellant, Pew, Taylor, Welch & Sheridan, St. Louis, of counsel.

Howell, Rayburn & Sanders, Norman S. Howell and John A. Weiss, Kansas City, for respondent.

DALTON, Judge.

Action for $25,000 damages for personal injuries alleged to have been sustained by reason of defendant's negligence. Plaintiff was injured when she slipped and fell on the terrazzo floor of the entranceway to defendant's store. At the close of plaintiff's evidence the court directed a verdict for defendant and entered judgment. Plaintiff has appealed.

In her amended petition plaintiff alleged that on November 30, 1953, while in the act of stepping from the public sidewalk into the entranceway of defendant's store "she was caused to slip and fall and did slip and fall due to the unsafe, negligent and dangerous construction, operation and maintenance of the surface * * *

of said entranceway * * * that the public sidewalk adjacent thereto is constructed of a firm non-slippery material which furnishes sure footing," while "the smooth, slick and glassy surfaced entranceway into the store is so constructed * * * as to constitute an uneven * * * dimly lighted, slippery, deceptive and dangerous surface * * * especially when wet * * * and exceedingly slippery and dangerous to persons entering said store from said sidewalk * * * and *because of the contrast in slipperiness between said sidewalk and the floor of said entranceway, and the deceptive similarity in appearance between the sidewalk and said floor."* (Italics ours.)

In view of the issues presented, we must review the evidence in some detail. Defendant's store is located on the west side of Main Street between 10th and 11th streets in Kansas City, Missouri. The entranceway faces east and is recessed into the building. There are two square columns at intervals at the outside wall of the building. The columns divide the entranceway into three parts. The show windows within the entranceway are set at an angle to the street so that the entrance is a shallow V-shaped opening into the building. The main entrance into the store is through three small doors and two revolving doors at the back of the entranceway. One of the exhibits indicates that the ceiling of the entranceway is several feet higher than the top of the door entrances.

The floor of the entranceway is of terrazzo and there is a line at the edge of the sidewalk. The line extends along the outside edge of the square posts or columns. The terrazzo surface slopes up into the entranceway. The amount or percentage of the slope does not appear from the evidence and there is no reference to or reliance on *slope* in appellant's briefs. An examination of the terrazzo entranceway by plaintiff's witness James Marra showed it to be "a typical job of installation." He noticed nothing unusual about its construc-

tion and said: "It was installed and maintained in accordance with good architectural practices." There were no mats or anything on the sidewalk or entranceway at the time plaintiff fell.

It had been raining hard for some thirty minutes before plaintiff reached the store about 1:30 p. m. The entranceway was wet. Plaintiff, 57 years of age, was on her way to purchase some thread and towels. She had her umbrella, her purse and a shopping bag. Her umbrella was up and in her right hand, her purse and handbag were in her left hand. She said she turned in between that pillar and the corner, into Peck's (defendant's) store and fell. "Well, I just stepped in there and my feet slipped out from under me and I fell." She fell backward with her head up toward the show windows and her feet down toward the sidewalk and the pillar. There was "not anything" that called her attention to the fact that she was about to walk on a different kind of surface. She said the sidewalk "was kind of dark gray looking color" and so was the terrazzo entranceway. "It all looked the same to me, I didn't know any different." (sic). She didn't "recall any light" in the entranceway. She did not recall whether it was freezing or not. "It was not too cold, but it was cold." She was wearing ordinary black rubber galoshes and didn't think she had closed her umbrella before she fell, because she had just come around the corner and started in. "I know I came in out of the rain." The sidewalk didn't seem to slick to her. She said: "I had stepped off the sidewalk and in there, as well as I can recall * * * I just stepped in * * * with both feet or just one * * * and my feet went out and I fell. * * * As far as I can recall, I was inside * * * I mean off of the sidewalk, and I had started to turn in. * * * I fell and was laying inside. I do not recall any (obstructions), it was slick and I fell there. * * * I can't recall just exactly how it happened, only I just stepped in there and I fell."

She admitted that she had testified by deposition that the sidewalk and entranceway "were both slick." At the trial she said the sidewalk "was bound to be a little slick because it was raining" and "so was the entranceway because there was water there from the rain." She further testified: "I was just looking, trying to look where I was going, no place special, only just looking where I was walking. * * * Well, I don't recall whether I was looking straight down or straight ahead, but I know I was watching where I was going in trying to get in there out of the rain." She didn't "recall how many people were there." No one close ahead of her that she could recall. She had never been in the entranceway before. She said that defendant's Exhibit "A" looked like a representative photograph of the entranceway as it existed at the time, "as well as I can tell." She marked an X on the photograph indicating where her feet were when she fell. It was daylight at the time, about 1:30 p. m., but "it was real cloudy." She admitted having testified that "I fell just as I went off of the walk and up that slope." She further said that she fell as she was stepping from the sidewalk into the entranceway and that "the entranceway sloped up." It was "slick and I just slipped." She had also testified that she didn't have time to notice anything unusual there "on the lobbyway." At the trial she said: "I just stepped in there and fell; it all happened so quick."

Plaintiff offered photographs taken about 4 p. m., December 9, 1956, when the sidewalk was dry, with the exception of wet foot prints tracked off the wet street. There was some sunshine that day and the sun was in the west at 4 p. m. The pictures were made with natural light.

Aileen Underwood, a witness for plaintiff, testified: "There is one thing, it seems to me it (the entrance) is very poorly lighted at the entranceway there, as you go in from the sidewalk to the entrance; it isn't very well lighted and you can't see and distinguish the sidewalk from the entranceway * * * so far as color is concerned." As to the texture of the sidewalk in front of the store, the witness testified: "It seems to me it is the same as any other sidewalk, it has good footage; but when you get in on the entranceway it is slippery," that is, when the entranceway is wet, it is slippery. The witness had experienced difficulty in walking across the entranceway but had never fallen. She further said: "It seems to me I couldn't distinguish * * * between the entranceway and the sidewalk, so far as color is concerned * * * as far as I can remember * * * Yes, it is about the same color." The witness further testified:

"Q. Is it your testimony in daytime you would have no trouble distinguishing the entranceway from the sidewalk, but your difficulty was at night; is that right? A. That is right. * * * Well, on a dreary day it might be poorly lighted * * * I go in in the evening most of the times.

"Q. So any lighting conditions you talked about as being poor had reference especially to the evening and not to the daytime? A. Well I suppose it would be the evening. * * *

"Q. And you have never had any trouble, have you? A. No I have never fallen on that place." The witness further said: "There is a line there (between the entranceway and the sidewalk). I don't think you would notice that when you are walking—particularly, when the weather was rainy or wet."

On cross-examination she testified:

"Q. If you were looking where you were walking you would have no trouble distinguishing the two sectors, would you? * * * A. That's right. * * * I mean when you are walking you would be looking down at your feet to see if there was nothing in your way that you are going to slip on.

"Q. Suppose you would be walking in this direction (indicating on exhibit) and looking in the direction of the entranceway, couldn't you distinguish between the two?

A. The picture there is definite, it seems to me you have a definite line; but in the real it doesn't look that way to me."

Frances L. Stone described the conditions at the entrance of the store as follows: "Well the sidewalk is rougher and the entrance is slick, and it is like walking on ice when you step on it." With respect to color she said: "I have seen no difference" between the color of the sidewalk and the entranceway. She had visited the store in the daytime when it was rainy and wet and, with respect to lighting, said: "It was dim. I do not know whether there were lights or not but I would say it was dim throughout the entranceway, all the way in." As to the lighting conditions about the sidewalk she said: "I don't know, I haven't noticed it. * * *

"Q. You said you could not distinguish the two areaways? A. No, sir. I didn't notice the difference in the coloring and the difference in walking until you step on it.

"Q. The entrance to the sidewalk (sic) was the same as far as you are concerned? A. Yes, sir." She further said she could tell where the sidewalk ends "by the crack in the walk is all." The point where she had difficulty in walking "would be on the inside there" by the doors. "In the revolving doors it is slick." She didn't have any trouble any place else. She further said: "A little ways from the doors is where it is slick * * * I have noticed you have to walk carefully or you can slip on it," the entire entranceway.

James Marra, an architect, inspected the terrazzo in the entranceway of the store and also the sidewalk in front of the store. He said the terrazzo was smooth and is "ordinarily a smooth, ground surface"; but that, when dry, terrazzo "would be considered slicker than concrete." As to the sidewalk he said: "The sidewalk in front of Peck's (defendant's) has a flowed surface which all the sidewalks in the city have, and the terrazzo surface being a ground surface, would be smoother than the sidewalk"; that when terrazzo became wet it would have a tendency to enhance the slipperiness; that he did not pay much attention to the color of the terrazzo as compared to the sidewalk there but he "did notice that they are more or less—of course, I would know that there is a slight difference in the shade of it, but in passing there for years before I hadn't particularly noticed or knew what type of entrance Peck's had, actually." In answer to a question as to whether or not it was too distinguishable, he said: "Well, actually not, unless you went and made a detailed inspection of it." On cross-examination he said the terrazzo entranceway "was installed and maintained in accordance with good architectural practices"; that terrazzo is not an uncommon material to be used in entranceways or walk surfaces", and that it was in fact quite common. "There is nothing hazardous about terrazzo walk surfaces." Terrazzo when used outside should have alumina for non-slip purposes. He could not tell whether there was alumina in the terrazzo there, but if there was alumina content it would be less inclined to be slippery than if it didn't have any in it. Any surface is more inclined to be slippery when wet. There was no alumina in the sidewalks in Kansas City that he knew of. He also had observed terrazzo entranceways at Baker's, Robinson's, Rothchild's and Macy's after his examination of Peck's entranceway. These entranceways are all on the same side of Main street between Eleventh and Tenth. These entranceways were made substantially the same as Peck's except Macy's, which was of a lighter color. The others were of darker color.

Plaintiff, as appellant here, contends that the court erred in directing the verdict for defendant. She contends (1) that she was a business invitee and that defendant negligently failed to keep its entranceway reasonably safe for her use and failed to warn her of its dangerous condition; (2) that the evidence and inferences favorable to plaintiff were sufficient to show that "defendant negligently created or main-

tained its entrance in a deceptively dangerous condition"; and (3) that plaintiff was not guilty of contributory negligence as a matter of law.

The evidence was sufficient to show that plaintiff was an invitee, a prospective customer; and that she entered defendant's premises for the purpose of purchasing goods there offered for sale by defendant. Wattels v. Marre, Mo.Sup., 303 S.W.2d 9, 14; Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410, 414. The duty owed by the occupier of premises to his business invitee is stated in the Happy case, supra, 213 S.W.2d 410, 415, as follows: "The 'owner or occupant of land who, by invitation, express or emplied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation.'" And see Stoll v. First National Bank of Independence, 345 Mo. 582, 134 S.W.2d 97, 100.

The rule is stated in 2 Restatement Law of Torts, Sec. 343, as follows: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm * * *." And see Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S.W.2d 813, 818; Wattels v. Marre, supra; Stafford v. Fred

Wolferman, Inc., Mo.Sup., 307 S.W.2d 468; Vogrin v. Forum Cafeterias of America, Inc., Mo.Sup., 308 S.W.2d 617.

In Dean v. Safeway Stores, Mo. Sup., 300 S.W.2d 431, 432, the court said the rule as declared and set forth in the Restatement is firmly imbedded in the jurisprudence of this jurisdiction, for the time being, and the problem is whether the facts and circumstances of the occurrence in question reasonably fit into the pattern of the rule as it has been established in Missouri. Under the rule the defendant was only required to exercise ordinary care to prevent injury to plaintiff. The defendant, as the occupier of the premises in question, was not liable to plaintiff-invitee for injuries resulting from an open and obvious condition of the premises as well known to the plaintiff as to the defendant. Accordingly, if the plaintiff was aware of the condition, or it was such that she must have been conscious of it and of the consequences of disregarding it, she cannot recover. Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 393; Mullen v. Sensenbrenner Mercantile Co., Mo.Sup., 260 S.W. 982, 984, 33 A.L.R. 176; Ilgenfritz Missouri Power & Light Co., 340 Mo. 648, 101 S.W. 2d 723, 726; Harper v. First National Bank of Kansas City, Mo.Sup., 196 S.W.2d 265, 267; Schmoll v. National Shirt Shops of Missouri, 354 Mo. 1164, 193 S.W.2d 605, 608; Fletcher v. North Mehornay Furniture Co., 359 Mo. 607, 222 S.W.2d 789, 794. In the Schmoll case, supra, 193 S.W. 2d 605, 608, the court said: "Defendant, who was not subject to liability for injuries resulting from dangers that were obvious, should not be obligated to anticipate that its patrons, in the exercise of ordinary care, would fail to appreciate dangers generally known to be inherent in conditions that were obvious."

Appellant does not question the law as declared by this court in Fletcher v. North Mehornay Furniture Co., supra, and Schmoll v. National Shirt Shops, supra. She merely says: "The Fletcher case follows

the Schmoll case in holding: 'There is no liability of defendant for injuries from dangers that are obvious, or as well known to plaintiff as to defendant.' These cases hold, in effect, that the dangers of slipping while walking on wet terrazzo is so well known, that a plaintiff knowingly walking on wet terrazzo cannot recover for injuries sustained in a fall. We are not concerned with the wisdom of this holding in the case at bar."

With commendable frankness appellant further says: "Concededly negligence is not shown by mere evidence that a store keeper maintains a terrazzo entranceway to his store, even though it is slippery when wet. Plaintiff does not assert any such claim of liability. The basis for liability in this case is that defendant *concealed* such a floor, by making it *indistinguishable* in color and appearance to the non-slippery adjacent sidewalk. Not the slippery characteristic of the floor alone, but the fact that the customer, having every reason to expect secure footing, is unexpectedly confronted with such a slippery floor, is the basis of plaintiff's case."

■ In support of her contention as to *concealment* and *indistinguishability* of the terrazzo covered entranceway from the concrete sidewalk, appellant refers particularly to the *color* of the terrazzo and to the *lighting* conditions. Appellant also insists, as stated, that she is entitled to a favorable view of the evidence and to all favorable inferences therefrom. While such is the rule, it is also well settled that outstanding conceded facts may not be disregarded when applying the rule. Neal v. Kansas City Public Service Co., 353 Mo. 779, 184 S.W.2d 441, 442. Nor does the rule require the court "to disregard the dictates of common reason and to accept as correct or true that which obviously, under all the circumstances in evidence, cannot be correct or true, nor does it require us to give plaintiff the benefit of any other than reasonable inferences." Hill v. Illinois Terminal Co., Mo.App., 100 S.W. 2d 40, 47(4).

■ As to lighting conditions, appellant contends that "the entranceway was dim and unlighted, which may have contributed to the indistinguishability of the terrazzo from the sidewalk." She further says that the evidence "establishes that the entranceway was generally dimly lit and that on the occasion in question there were no lights apparent in the entranceway."

Plaintiff was the only witness present to observe the lighting conditions as they existed at the time of her fall. She testified: "Q. Do you recall the lighting conditions in the entranceway there? A. I don't recall any light." Plaintiff's witness Underwood did testify that the entranceway "is very poorly lighted * * * it isn't very well lighted * * * on a dreary day it might be poorly lighted." Witness Stone said the entranceway was dim throughout and "all the way in." However, plaintiff fell immediately after she left the sidewalk. She marked the place on each of the photographs as being very near the line dividing the terrazzo from the sidewalk.

We think the evidence was insufficient to show inadequate lighting in view of the admitted facts and plaintiff's own testimony. Main Street extends in a north south direction. Defendant's store fronts east on the west side of Main Street. The entranceway in question is a narrow V-shaped, high ceiling opening, with two square columns at the outside wall of the building. There is no evidence of any canopy. Plaintiff said she stepped into the entranceway to get out of the rain. It was 1:30 p. m. In view of the physical facts, it is obvious that the lighting conditions, one step or so off the sidewalk into the entranceway, could be little or no different from full daylight at that hour on a cloudy, rainy November day. In any case, the testimony in the record is wholly insufficient to show inadequate lighting or to present a submissible issue that the place where plaintiff fell was dim and unlighted. See Hardin v. Illinois Central R. Co., 334 Mo. 1169, 70 S.W.2d 1075, 1079.

As to *color* and *indistinguishability* appellant says: "The evidence is clear that plaintiff did not know that defendant's entranceway was of terrazzo and could not discover this fact from ordinary examination, *because the sidewalk and the terrazzo were of the same color.* * * * The terrazzo was *the same color as the sidewalk and could not be distinguished from it* except upon a detailed inspection. Defendant camouflaged the terrazzo by making it *the same color as the sidewalk.*" (Italics ours.)

The issue presented is whether plaintiff's own evidence, as a matter of law, shows that it was open and obvious that defendant's entranceway was of terrazzo, regardless of the similarity of color.

While a business invitee cannot fasten liability upon the proprietor of a store by failing or neglecting to see that which is perfectly obvious to a person in possession of his faculties, there is no exact test or formula by which it may be determined whether or not a condition is so open and obvious that one is bound to see it. Each case must turn upon its own facts and circumstances. Summa v. Morgan Real Estate Co., supra, 165 S.W.2d 390, 393.

Plaintiff's evidence shows that the entranceway was of terrazzo and was a typical job of installation. There was nothing unusual about it. It had been installed and was being maintained in accordance with good architectural practices. Terrazzo was shown to be in common use for entranceways and walk surfaces in Kansas City and was used in the entranceways to similar establishments in the same vicinity. Webster's New International Dictionary defines terrazzo as "a kind of flooring made of small chips of marble set irregularly in cement and polished." The photographs in evidence also show that the entranceway in question has a spotted or mottled appearance. The testimony shows that this terrazzo had a smooth, ground surface. The amended petition alleged that "the said entranceway into defendant's said store is constructed of a smooth, slick and glassy surface." On the other hand the sidewalk in front of defendant's store "has a flowed surface which all the sidewalks in the city have." It was the usual and ordinary concrete sidewalk, rougher than the entranceway. It appears therefore from plaintiff's own evidence that the surface appearance of the sidewalk and the terrazzo was quite different regardless of any similarity in color. The evidence as to indistinguishability in the daytime was limited to absence of light or similarity of color and not to material or substance. It further appears from plaintiff's testimony and her photographic evidence that the edge of the sidewalk was clearly marked by the two square columns at the outside wall of the building and by the division line separating the entranceway from the sidewalk. Further, the entranceway was recessed in with the show windows at an angle and the·terrazzo "sloped up" from the sidewalk. Plaintiff's petition said "with an unusually steep and dangerous slope upward." Plaintiff further said that she turned in between the corner and the column and entered upon the premises to enter defendant's store and to get in the entranceway "out of the rain." Plaintiff's own testimony therefore shows that she knew she was leaving the sidewalk and entering upon defendant's premises. The situation was open and obvious. While it is apparent from the evidence and admitted facts that the entranceway was slicker than the concrete sidewalk when dry and that both the terrazzo and the sidewalk were slicker when wet, there is no evidence that the degree of difference between the wet terrazzo and a wet concrete sidewalk is any greater than the difference between dry terrazzo and a dry concrete sidewalk.

Plaintiff did not testify that she could not tell a concrete sidewalk from terrazzo, but said the sidewalk "was kind of dark gray looking color" and so was the entranceway. "It all looked the same" to her, she didn't know any difference. But she was speaking of color. She so admits in her brief. Her witnesses Underwood and Stone said the entranceway and the side-

walk were about the same color, they could not distinguish them "so far as color is concerned." They did not say that the terrazzo looked like a concrete sidewalk or the concrete sidewalk looked like the terrazzo, or that they could not tell the terrazzo from a concrete sidewalk. Witness Underwood said you would have no trouble distinguishing the entrance from the sidewalk in the daytime. No witness testified that the surfaces and materials were not clearly distinguishable. There was no evidence that the terrazzo entranceway was not recognizable as such to anyone that looked. The fact that plaintiff testified: "It all looked the same to me, I didn't know any different" (sic), was insufficient to show *indistinguishability*, where it was admitted that the entranceway was terrazzo and the sidewalk ordinary flowed concrete and there were other facts in evidence from which it was open and obvious that plaintiff was leaving the sidewalk and entering upon a terrazzo surfaced entranceway.

Appellant admits there is a difference in intensity of *color* between the sidewalk and the terrazzo on the entranceway, as shown on the exhibits, but says the difference is minimized when both are wet. A careful reading of the entire record shows that the only evidence of similarity between the sidewalk and the entranceway was color. Because of the similarity of color, appellant seeks to construe the evidence as establishing "that the entranceway was constructed of material which was indistinguishable *in appearance* from the adjacent sidewalk," and that "the two surfaces looked like they were the same material." (Italics ours.) The evidence does not support this contention.

Appellant relies particularly upon Long v. F. W. Woolworth Company, Mo.Sup., 159 S.W.2d 619, 624, where the invitee caught her heel in a small hole in the floor; Cameron v. Small, Mo.Sup., 182 S.W.2d 565, 568, where a screen door obstructed the view of a sloping concrete ramp; Summa v. Morgan Real Estate Co., supra, where plaintiff fell upon a small oily spot on the floor of a store, and Dean v. Safeway Stores, supra, where plaintiff tripped over a wire hoop on an insufficiently lighted parking lot. The cases are distinguishable upon their facts.

It is our conclusion that the trial court did not err in directing a verdict for defendant, because the record fails to show negligence on the part of defendant. The danger from walking on the terrazzo, under the facts shown, was open and obvious and, there was no reason to believe that an invitee, such as plaintiff would not discover the condition or realize the risk involved in walking on the terrazzo-covered entranceway. Fletcher v. North Mehornay Furniture Co., supra; Schmoll v. National Shirt Shops of Missouri, supra; Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278, 279; Mullen v. Sensenbrenner Mercantile Co., supra, 260 S.W. 982, 984. Further, it was not reasonably foreseeable that plaintiff would not see the terrazzo, realize the risk in walking thereon and guard against falling. Mann v. Pulliam, 344 Mo. 543, 127 S.W.2d 426, 427.

The judgment is affirmed.

All concur.