Helen MILLIKEN, Appellant,

v.

TRIANON HOTEL COMPANY, Respondent.

No. 23649.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

Kranitz & Kranitz, St. Joseph, Jay Macey Rosenblum, Kansas City, for appellant.

John R. Gibson, F. Burck Bailey, Morrison, Hecker, Cozad & Morrison, Kansas City, for respondent.

HUNTER, Presiding Judge.

This is an appeal by plaintiff, Helen Milliken, from the judgment of the trial court setting aside her verdict and judgment for $13,185 obtained against defendant, Trianon Hotel Company, and granting a new trial. The numerous contentions of error on this appeal include a challenge of the correctness of plaintiff's verdict directing instruction and the sufficiency of the evidence to make a submissible case.

In her petition plaintiff alleged, among other things, that on January 3, 1959, about 3:00 a.m. while in the process of leaving the Muehlebach Hotel she "made her way down the stairs toward the main lobby portion of the hotel, and in doing so, stepped upon a soapy and/or wet slippery substance on or about the second step of the top flight of the stairs, when and where * * * she was caused to slip, slide and violently fall * * * "—all due to the alleged negligence of the defendant in permitting such a covering of soap and/or water to be and remain on the stairway and the adjoining floor causing them to be dangerous and unsafe.

At the jury trial plaintiff testified that she, her friend, Mrs. Hyde, and a male acquaintance, entered the hotel, located in downtown Kansas City and owned by defendant, to visit another friend, Mr. William Roundtree, who was staying there. The three of them entered the lobby portion of the hotel from its Coffee Shop, where they had dined. They proceeded through the lobby, west through a wide hall, and on up the steps in question to an elevator which they rode to Mr. Roundtree's floor. At that time plaintiff observed nothing unusual going on.

Some fifteen or twenty minutes later she, Mrs. Hyde, and their acquaintance left Mr. Roundtree's room and proceeded to leave the hotel. They descended in the elevator, proceeded easterly and approached the mentioned stairs which lay in an east-west direction. Plaintiff was ahead, with Mrs. Hyde and the man behind her in that order. There were two men in work-uniform clothes there by the south wall, both either on the top landing or one on the steps and the other on the top landing. Near them on the far south side were a bucket and mop. The men were blocking plaintiff's way. Mrs. Hyde said, " 'They are working here', she said, 'We will take the other side' ".

We refer to pertinent portions of plaintiff's testimony describing her fall. "There is only one way to return, we came down on the elevator, turned to our right, and there is two series of steps—it has a divided rail in the center. * * * they have a blond, light brown surface to them, rather mottled. * * * it's divided by three railings. * * * The far railing is on the south side, then there is a center railing dividing the two flights of stairs, and then one on the north side. * * * I took the north railing. * * * I walked up to the steps, took ahold of the railing, and stepped down and just slipped. * * * Q. Do you know what caused you to slip? * * * A. The steps were wet".

After plaintiff's fall down the flight of steps Mrs. Hyde spoke, " 'Why look' she said, 'the steps are wet', and I actually had to look and keep looking before I realized they were wet. The stone is— whatever the surface or composition of the floor is, it is of such a color that you hardly see it, and the lights are so bright in there that there is almost a glare. * * * I had to look intently before I could see the wetness there because the glare is so bright in there and the coloring of the floor is so neutral like that it is very difficult for you to see. * * * I could see wetness. * * * it was wet, there was no doubt about it."

Plaintiff described the condition of her clothes as a result of her fall. "Well, they were dirty and they were black, and they had some white streaks over them, and smudges of white. * * * There was a wetness there (on the clothes) and there was some white streaks, and white looking places over the black material. * * * some soil, possibly could have been dirt, and it brushed off, but the white streaks wouldn't all come off. * * * (These streaks and whiteness were) on both the coat and dress. * * * On the underclothing I really don't know. It was torn and soiled, and I threw it away."

Mrs. Hyde's testimony in general corroborated plaintiff's version of the occurrence. She stated plaintiff "* * * put her hand on the rail and took about the first step and her foot slipped out from underneath her and she tried to hold on to the rail, and she finally just fell on the steps. * * * I said, 'Well, no wonder you fell, they are wet'. * * * They were just wet-like all over. * * * All the steps. * * * She had like mud and a sort of a white substance on her clothing. Q. * * * (were the clothes wet?) A. Oh, yes, definitely. You could see it was on her dress and coat. * * * a good sized area."

As a result of the fall plaintiff's foot was broken, and she suffered other injuries.

Challenged verdict directing Instruction Number One given on behalf of plaintiff reads:

"The Court instructs the jury that if you find and believe from the evidence that on January 3rd, 1959, at approximately 3:00 to 3:30 a. m., plaintiff was a customer or guest, either or both, of defendant's Hotel Muehlebach, it then became the duty of the defendant to exercise ordinary care to keep the premises, including the Wyandotte Street lobby, and the stairs leading from said Wyandotte Street lobby and entrance, to the central, main lobby of the hotel, in a reasonably safe condition for use of defendant's customers and guests.

"The Court further instructs the jury that if you find and believe from the evidence that on the occasion mentioned, the defendant's agents had mopped or washed a portion of the north half of the first flight of stairs immediately below the level of the Wyandotte Street lobby, which portion plaintiff was intending to descend, leaving a wet and slippery substance on said stairs, and that the premises, by reason of the presence of said wet and slippery substance on said stairs, if any, were not reasonably safe, and that plaintiff was not warned of the presence of said substance, if you so find, and if you further find that defendant, by and through its agents, servants and employees, by the exercise of ordinary care knew, or could have known, of the presence of said wet and slippery substance in time to have removed or remedied the same or to have given plaintiff warning of the presence of said wet and slippery substance, but that the defendant failed to have done so, if you so find, and if you further find that such failure, if any, was negligence and that plaintiff stepped down upon portions of the wet and slippery stairs and was caused to fall and be injured as the direct result of such negligence, if any, then the Court instructs the jury that plaintiff is entitled to recover and your verdict must be in favor of the plaintiff and against the defendant, unless you find the plaintiff guilty of contributory negligence as submitted in other instructions herein."

It is defendant's contention that the trial court properly granted a new trial because Instruction Number One (a) contained in its first paragraph an incomplete and erroneous abstract statement of the law for it ignored defendant's duty to warn only of dangers and conditions that are not open and obvious; (b) failed to require a finding that the condition of the steps should or would not have been known to customers in the exercise of ordinary care, and ignored the open and obvious condition of the stairway; and (c) failed to require a finding that plaintiff had no knowledge of the dangerous condition.

■ Slip and fall cases of the general type of that before us have been numerous in this state and the applicable law is well established. It is the general duty of the hotel owner to use reasonable care for the safety of an invitee using the premises. See, Annotation, Slippery Steps—Injury, 63 A.L.R.2d 738. The rule is aptly stated in 65 C.J.S. Negligence § 45b, page 526, "The owner, occupant, or person in charge of premises owes to invitees or business visitors thereon the duty of exercising reasonable care to keep the premises in a reasonably safe and suitable condition, or of warning invitees or business visitors of hidden or concealed perils of which he knows or should know in the exercise of reasonable care, so that those whom he has invited to enter upon or use his property shall not be unnecessarily or unreasonably exposed to danger."

Further illumination of the scope of this duty is stated by our Supreme Court in Stafford v. Fred Wolferman, Inc., 307 S.W. 2d 468: "The basis of the defendant-proprietor's liability is defendant's superior knowledge of an unreasonable risk of harm *of which the invitee does not or in the exercise of ordinary care should not know.* Such a defendant is not liable for injuries due to dangers which are obvious, or as well known to plaintiff as to defendant. And in such circumstances there is no duty to warn because the invitee has the information which would be conveyed by a warning." (Emphasis ours.) In Wattels v. Marre, Mo.Sup., 303 S.W.2d 9, 14, 66 A.L.R. 2d 433, Judge Dalton speaking for the court expressed it thusly: "The basis of defendants' liability as possessors of land for injuries sustained by their invitees, is defendants' superior knowledge of an unreasonable risk of harm *of which the invitee does not or in the exercise of ordinary care would not know,*" citing Douglas v. Douglas, Mo. Sup., 255 S.W.2d 756, 758(4). (Emphasis ours.) See, also, Murray v. Ralph D'Oench Company, 347 Mo. 365, 371, 147 S.W.2d 623, 626; Heine v. John R. Thompson Company, Mo.Sup., 330 S.W.2d 867.

■ Plaintiff in Instruction Number One overstated and incorrectly stated the extent of defendant's duty by failing to note it required defendant, as to unsafe premises and conditions actually or constructively known to defendant, to warn plaintiff only of those dangers that are not known and would not be known to one exercising ordinary care— for example, of dangers that are not open and obvious to an invitee using the premises. The partial and incorrect statement of the duty in the instruction is of such a nature as to mislead a jury and to cause it to believe defendant's duty is greater than it is.

In the case of Stafford v. Fred Wolferman, Inc., supra, the questioned instruction was quite like the present one. In holding it reversibly erroneous the court stated, 307 S.W.2d l. c. 476: "To the extent the drafter of the instruction undertook to extensively and abstractly state defendant's duty as a legal premise to the submission of plaintiff's case, he should have correctly and completely stated the extent of the duty."

Turning to the remainder of Instruction Number One, it fails to require the jury to find (1) that the asserted dangerous condition of the steps would not have been known to an invitee—user of the steps, such as plaintiff, in the exercise of ordinary care and (2) that plaintiff did not know of such dangerous condition.

■ Lack of actual or constructive notice of the dangerous condition is an essential element of a business invitee's right to recover, Wilkins v. Allied Stores of Missouri, Mo.Sup., 308 S.W.2d 623–628; Heine v. John R. Thompson Co., supra. Certainly if the dangers and unsafe conditions are open and obvious to an invitee, as defendant insists the evidence demonstrates, there would be no duty to warn him of them, and this because the invitee has the information which would be conveyed by a warning. As stated by Judge Cave in Schwartz v. S. S. Kresge Company, 238 Mo.App. 1165, 185 S.W.2d 37, 40, " * * * it was necessary for plaintiff, as an essential part of her

case, to prove and submit the proposition that she had no knowledge of the existence of the danger and that defendants breached their duty by not warning her of it." See, also, Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278, 279; Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369, 373. We are constrained by these authorities to rule that the instruction is prejudicially erroneous.

■ Nor is the error cured or the prejudice removed by the reference to another instruction on contributory negligence. Although all instructions in a case are to be read as a whole, it is the rule that if an instruction purporting to cover the whole case and authorizing a verdict, leaves out a fact, essential to a recovery, it is not cured by another instruction requiring a finding of such fact—and this because the instructions are in conflict, with a naturally resulting confusing of the jury. McDaniel v. McDaniel, Mo.Sup., En Banc, 305 S.W.2d 461, 467.

■ Additionally, a fact necessary to plaintiff's case is one on which plaintiff has the burden of proof, and plaintiff must carry and satisfy that burden. The omissions in the verdict finding instruction do not go merely to the defense of contributory negligence. They are essential elements of plaintiff's case. To say a fact essential to a plaintiff's cause but omitted from his verdict directing instruction is supplied by reference to a contributory negligence instruction would have the unsound effect of shifting the burden of proof as to that fact. Although no further reason is needed, we note the literal language of the contributory negligence instruction does not require the finding of any fact that would necessarily establish the omitted elements of plaintiff's verdict directing instruction as to lack of actual or constructive notice of the alleged dangerous condition.

■ Defendant contends plaintiff was guilty of contributory negligence as a matter of law for proceeding as she did to use the landing and steps after she had observed the two workmen, the bucket, and could observe the condition of the steps and landing if she had looked. Defendant in effect claims that whatever danger there may have been was open and apparent to anyone who was in the exercise of ordinary care for his or her own safety. Without going into the details of her testimony about looking (for we realize that subject may be more fully explored on retrial) it is our ruling that on the record before us she was not guilty of contributory negligence as a matter of law, and the trial judge correctly submitted the issue of her contributory negligence to the jury.

■ Defendant insists that in no event should this case be remanded for a new trial for the reason that plaintiff failed to make a submissible case under all the facts adduced in evidence. The trial judge believed a submissible case had been made and consistently so ruled. He ordered a new trial. Where the trial judge has ordered a new trial for error committed during the trial, and the question of the sufficiency of the evidence to make a submissible case is very close, the furtherance of justice requires a case should not be reversed without remanding unless the appellate court is convinced the facts are such a recovery cannot be had upon proper retrial. See, Yarrington v. Lininger, Mo.Sup., 327 S.W.2d 104, 111(15); La Tour v. Pevely Dairy Co., Mo.App., 349 S.W.2d 436(5); Boland v. Dehm, Mo.App., 348 S.W.2d 603, 607(7).

Upon our independent examination of the transcript we have concluded that in the interests of justice the cause should be remanded for a new trial. We conclude for reasons not discussed here but mentioned in appellant's brief that the question of submissibility is close. On a new trial the evidence may be more thoroughly or differently presented. The trial court will have an opportunity to pass on the question of submissibility on the record then before him, as will the appellate court if an appeal should be taken.

Appellant has presented other contentions of error, including excessiveness of the verdict. We need not rule these contentions as they may not recur on the new trial.

The judgment is affirmed and the cause is remanded for a new trial.

All concur.