Vincent **COLLETTI**, Appellant,

v.

**CROWN CORK & SEAL COMPANY**, a corporation, Appellee.

No. 17989.

United States Court of Appeals
Eighth Circuit.

June 24, 1966.

Theodore D. Ponfil, St. Louis, Mo., for appellant. William P. Byrne, St. Louis, Mo., was with him on the brief.

F. Douglas O'Leary, M. E. Stokes, of Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, Mo., for appellee.

Before VOGEL, Chief Judge, MATTHES and MEHAFFY, Circuit Judges.

VOGEL, Chief Judge.

Vincent Colletti, plaintiff-appellant herein, instituted this action in the District Court seeking money damages for personal injuries sustained by him as the result of an accident which allegedly occurred because of the negligence of the corporate defendant, appellee herein, Crown Cork and Seal Company, in failing to warn appellant of a danger on appellee's premises. The trial resulted in a jury verdict in favor of the appellee. Thereafter appellant filed his motion in the District Court for a new trial, which motion was overruled. Subsequently this appeal from the judgment was perfected. We affirm.

Appellee is engaged in the production and manufacturing of beer cans. As part of the production process, the interiors of the beer cans are sprayed with a "lacquer" for the protection of the ultimate consumer. The lacquer is applied to the inside of the cans by automatic spray machines supplied with lacquer from a drum vault in appellee's basement by means of a series of one and one-half inch diameter copper pipes or lines with screwed fittings. The lacquer is flammable. There are three-quarter inch diameter copper return lines with "sweat" fittings emitting from the lacquer spraying machines, which return lines are used when the lacquer supply lines are periodically flushed out. Valves on the return lines allow materials therein to be drained.

Appellee had contracted with General Installation Company (hereafter General) to install an additional beer can production line in its plant. General commenced work in March of 1963. It was necessary for General to install additional piping for appellee's lacquer spraying system in order to service the new production line. Besides installing additional lacquer piping, it was also necessary for General to make connections into the then existing lacquer lines.

Appellant was employed by General as a pipefitter to work on the installation of the additional lacquer piping system. Appellant had first worked in appellee's plant on Saturday, June 8, 1963. Late on Sunday afternoon, June 9, 1963, at a time when appellee's plant was not in operation, appellant and a fellow em-

ployee, Luther Launins, began to work on a return or flush-out line which was a part of the existing lacquer piping system. They were to "unsweat" a joint of the old return line by heating the solder and then to install a T valve. To unsweat, appellant used a Prestolite tank which produced a flame of sufficient heat to melt the solder on the sweat units. Appellant applied heat to the joint. When he saw the solder melting, he took a channel lock and broke the joint. In appellant's own words, " * * * the next thing I knew I was on fire." Apparently when appellant broke the joint he was sprayed with lacquer which was ignited by the heat that had been produced by the Prestolite tank.

Donald Kadera, pipefitter foreman for General, testified that Willis Reasa, a master mechanic employed by appellee, had advised him, Kadera, that

" * * * the [lacquer] lines would be clear, this one particular line of the flushout line, [upon which appellant was working at the time of the accident], that would be clear for us to tie in, and we discussed how we were going to do it, what fittings we were going to use.

*    *    *    *    *    *

"Q. Did you inquire of Mr. Reasa whether or not this line was cleared out?

"A. Just that I checked with him again and asked him if that line was clear."

Reasa specifically denied the above conversations.

On cross-examination appellant admitted he knew that he and Launins were working on lacquer lines; that such lines had been pointed out to them by Kadera; that Launins went down to check the valve on the lacquer line to determine if lacquer was in the line, but that Launins could not find the valve; that appellant did not ask anybody from Crown Cork where the valve was located; that there would have been no danger or no accident if appellant had used a compression fitting on the lacquer line which did not require the use of heat; and that as a pipefitter appellant knew it would be hazardous to use a torch on a line that contained lacquer.

Kadera testified that a compression fitting could have been made on the lacquer line appellant was working on without the dangers involved from the heat used for unsweating. Myron Glassberg, General's president, testified that, "A compression fitting could be installed on a line containing lacquer without creating a hazard." Reasa testified that appellee had advised General to use compression fittings on existing lacquer lines rather than to try and unsweat through the use of heat. Alan Reiman, General's project engineer, testified that compression fittings were not used because General could not find the type of fitting needed in the size required.

It was further shown by the evidence that the lacquer line could have been checked to determine if it contained any volatile substance by cutting into the line with a pipe cutter or hacksaw or by opening the drain valve on the return line. Kadera testified that the drain valve was " * * * within arms length of where Mr. Launius [sic] was standing below the scaffolding on which Mr. Colletti was working." Appellant had picked up a hacksaw prior to the accident but had put it back without testing the line.

The appeal here is premised on a claim of error in the instructions. That portion of the court's charge to the jury which is alleged by appellant to be erroneous is as follows:

"The court further instructs the jury that if you find from the evidence that on the occasion mentioned therein plaintiff knew *or by the exercise of ordinary care should have known* that the copper line on which he was working at the time of his accident was one containing a volatile substance, then plaintiff is not entitled to recover, and your verdict shall be in favor of defendant, and this is true regardless of any other fact or circumstance in evidence." (Emphasis supplied.)

Appellant's contention here is that the italicized portion of the above instruction is an erroneous statement of the law of Missouri, applicable herein, and that it "completely misrepresents and misstates the substantive duty of appellee" toward appellant, an invitee on appellee's premises. Appellant feels appellee was negligent in failing to warn appellant of the danger from applying heat to the lacquer piping. Without proof of actual knowledge by the invitee of the danger, appellant contends that appellee cannot prevail in this action. Appellant feels the instruction, as given, erroneously allows appellee to avoid liability if it shows appellant had constructive knowledge of the danger.

We find that the instruction given and presently challenged is not erroneous as being a misstatement of the law of the State of Missouri. It is conceded under the circumstances existing herein that appellant was an invitee on the premises of appellee. Appellant concedes that the appellee, as the invitor, would not be liable to him as its invitee for bodily injury sustained by him if he knew of the dangerous condition and realized the risk involved. The authorities go further and clearly indicate that such knowledge may be constructive as well as actual.

The Missouri rule is clearly stated by Chief Justice Dalton of the Supreme Court of Missouri in Wattels v. Marre, Mo., 1957, 303 S.W.2d 9, 14, 66 A.L.R.2d 433, wherein he said:

"* * * The basis of defendants' liability as possessors of land for injuries sustained by their invitees, is defendants' superior knowledge of an unreasonable risk of harm of which the invitee does not *or in the exercise of ordinary care would not know.* Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756, 758(4)." (Emphasis supplied.)

See, also, Milliken v. Trianon Hotel Co., Mo.App., 1962, 364 S.W.2d 71, wherein the court stated, at page 74:

"Plaintiff in Instruction Number One overstated and incorrectly stated the extent of defendant's duty by failing to note it required defendant, as to unsafe premises and conditions actually or constructively known to defendant, to warn plaintiff only of those dangers that are not known and would not be known to one exercising ordinary care * * *.

* * * * * *

"Lack of actual or constructive notice of the dangerous condition is an essential element of a business invitee's right to recover, Wilkins v. Allied Stores of Missouri, Mo.Sup., 308 S.W. 2d 623-628; Heine v. John R. Thompson Co., supra [Mo., 330 S.W.2d 867]."

The Supreme Court of Missouri, in Stafford v. Fred Wolferman, Inc., Mo. Sup., 1957, 307 S.W.2d 468, dealt with failure of the lower court to instruct that the landlord was not liable for dangers that should have been known by the invitee in the exercise of ordinary care. The court said at page 476:

"* * * To the extent the drafter of the instruction undertook to extensively and abstractly state defendant's duty as a legal premise to the submission of plaintiff's case, he should have correctly and completely stated the extent of the duty. To have more correctly and completely stated defendant's duty to warn, the drafter of the instruction should have added a qualifying clause in effect, as follows, *'and would not have been known to its customers and invitees in their exercise of ordinary care.'* See again Wattels v. Marre; Douglas v. Douglas; and other cases cited supra. Absent such a qualifying clause, the abstract statement of defendant's duty was incomplete and erroneous. * * * there was no clause to the effect that plaintiff could not or would not have known thereof in the exercise of ordinary care on her part." (Emphasis supplied.)

See, also, Kenward v. Hultz, Mo.App. 1963, 371 S.W.2d 344, 349.

We are of the opinion that under the circumstances herein the giving of the challenged instruction was entire-

**462**

ly correct and properly stated the law of Missouri. From the evidence the jury could and apparently did find that appellant, an experienced pipefitter, should have been aware of the dangers from applying heat to the lacquer line involved. Appellant's own testimony, summarized supra, was most damaging in this regard. The evidence indicates that even though appellant was aware of safety precautions that could have been followed, he did not do what should have been done by someone in his situation. The danger need not have been so obvious that it was visible to appellant's naked eye to obviate appellee's duty to warn. As long as appellant was aware or should have been constructively aware of the danger, appellee was not negligent by failing to give appellant any warning. The instruction clearly set forth this principle.

Affirmed.