CHESTER TAYLOR, Administrator of the Estate of CHARLES U. TAYLOR, DECEASED, Appellant, v. MISSOURI, KANSAS & TEXAS RAILROAD COMPANY, a Corporation, CHARLES PERSINGER and J. W. MURRELL. —No. 40548.—212 S. W. (2d) 412.

Division One, June 14, 1948.

*Don C. Carter* and *Thomas G. Woolsey* for appellant.

*Carl S. Hoffman, Schaumburg & Martin* and *W. H. Martin* for respondents.

[413] CLARK, J.—Charles Taylor was struck and killed by a freight train belonging to respondent railway and operated on its track by its employees. Taylor's administrator, alleging that the death was due to the negligence of the defendants under the humani-tarian rule, sued the railroad and its engineer and fireman for $10,000.00. At the close of plaintiff's case the trial court sustained a motion for a directed verdict in favor of defendants and entered judgment accordingly. Plaintiff appeals.

The tragedy occurred on the main line track of the railway where it crosses Spring Street, an east and west street in the city of Boonville. Three other tracks cross the street west of the main track, the distance from the west rail of the main track to the east rail of the next track, termed the "passing track," is about ten feet. Starting from Spring Street the tracks curve to the southwest disappearing from view at a point about 600 feet from the crossing. The tracks rise in a fairly heavy grade for a considerable distance to the southwest from Spring Street. On the street at each side of the tracks are electric signals which both flash a light and ring a bell. The evidence shows the east signal was working. There was no testimony as to the west signal. The train was a north bound through freight, two engines, forty-six cars, weighing about twenty-five hundred tons. The engineer testified that coming down the grade toward Boonville he made two applications of the air brakes. The first had reduced the speed of the train and had been released. When

the speed increased the second application was made and the brakes were on as the train reached the crossing. These two applications had so reduced the pressure in the train line that a complete emergency stop could not be obtained. The engineer was on the outside of the curve and could not see the crossing or anyone approaching it. The train whistle had been started about one-fourth of a mile southwest of the crossing and was still sounding when the train reached the crossing.

When the front end of the engine was from 104 to 154 feet from the crossing the fireman saw deceased walking slowly east toward the train just as he stepped over the west rail of the passing track. The train was then traveling twelve or fifteen miles per hour and deceased, a feeble old man, was walking one or two miles per hour with his head down. The fireman testified that he told the engineer "blow your whistle, there's a man coming across the track." The engineer at once began to sound short blasts of the whistle and, when the fireman sprang up and waved to deceased, the engineer moved the brake valve handle to the emergency position. Deceased was about the center or a little east of the center of the main track when struck and his body was thrown east of the train. The train came to a stop in about 450 feet. The engineer testified that had he applied the emergency brake at the exact time he started the short blasts of the whistle the speed of the train would not have been slackened appreciably before it reached the crossing.

Testimony as to speeds, distances and the actions of the engineer and fireman was furnished by the two trainmen who were put on the stand by plaintiff. As defendants and employees of the railroad they were interested parties, but their testimony was uncontradicted and was corroborated by another witness for plaintiff as to the sounding of the train whistle and the working of the warning signal at the crossing.

When the trial court was considering defendants' motion for a directed verdict, one of plaintiff's attorneys admitted that it should be sustained as to the fireman because the evidence did not show any negligence on his part.

Appellant cites the following cases: Banks v. Morris & Co., 302 Mo. 254, 257 S. W. [414] l. c. 484; Woods v. Kurn, (Mo. App.) 183 S. W. (2d) 852; Gould v. Railroad, 315 Mo. 713, 290 S. W. l. c. 138; Trussell v. Wright, (Mo. App.) 285 S. W. l. c. 117; State ex rel. v. Haid, 333 Mo. 76, 62 S. W. (2d) l. c. 403; Tharp v. Thompson, (Mo. App.) 139 S. W. (2d) 1116; Standard Co. v. McDaniel, 280 Fed. 993. Those cases discuss the humanitarian rule as it is applied in Missouri, but differ in their facts from the instant case.

Boiled down, appellant's attempt to apply the rule is as follows: the engineer testified that, had he applied the emergency brake imme-

diately upon being told by the fireman that a man was coming on the track, he could have slackened speed "very little"; that means he could have slackened speed *"some"*; and, as deceased was in the center or slightly east of the center of the track when hit, a slight slowing of the train would have permitted him to escape injury. Therefore, appellant says, the engineer failed to employ all reasonable means in his power to avoid injuring deceased.

We think appellant's argument is untenable because based largely upon conjecture. By conceding that the fireman was not negligent, appellant also concedes that there was no duty on the engineer to act until the fireman warned him. The fireman did not tell the engineer to apply the emergency brake. He told him to sound the whistle, apparently thinking that emergency blasts of the whistle would be sufficient warning. [Deceased was nearly deaf, but there is no proof that the fireman knew or should have known that fact.] But, conceding that the engineer should have applied the emergency brake when told to sound the emergency whistle, there is no proof of "reaction" time, that is, the time necessary for the mind and muscles of the engineer to react to the warning. Nor is there any proof as to how much the speed could have been slackened had the emergency brake been sooner applied. When the fireman saw deceased he was stepping over the east rail of the passing track, ten feet from the west rail of the main track. We take judicial notice that the standard gauge of railroad tracks is 4 feet 8 ½ inches. We also know that locomotives are wider than the tracks, how much wider we do not know and the evidence does not inform us. So, deceased would come into the path of the overhang of the engine in less than ten feet from the place where the fireman saw him and would have had to travel more than fifteen feet to clear the main track and the overhang of the engine.

Appellant does not contend that the train could have been stopped before deceased reached its path. He argues that by instantaneous application of the emergency brake the speed could have been slackened enough to permit deceased to clear the path of the train, or, at least, that that was a question for the jury. We do not think so. The proof shows that the train traveled four hundred and fifty feet after the emergency brake was applied. How much the speed could have been slackened in going 104 or 154 feet [or a less distance if any allowance is made for reaction time], and how far deceased had to travel to a place of safety would have been matters of pure conjecture for the jury and are such for us. There was no evidence from which the jury could reasonably find that the engineer after receiving notice from the fireman "had the present ability, with the means at hand, to have averted the impending injury." [Banks v. Morris, 302 Mo. 254, 257 S. W. 482.]

In Wolverton v. Kurn, 348 Mo. 908, 156 S. W. (2d) 638, on facts quite like those in the instant case we held that there was no submissible case.

The judgment of the trial court is affirmed. All concur.