Cleo George ORNDER, Respondent,

v.

Clyde Ray CHILDERS, Jr., Appellant.

No. 46589.

Supreme Court of Missouri,

Division No. 2.

Sept. 16, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 12, 1959.

914 ■

———◇———

Heneghan, Roberts & Cole, and George E. Heneghan, St. Louis, and Blanton & Blanton, Sikeston, for defendant-appellant.

Gray & Jeans, St. Louis, and Harold Jones, New Madrid, for plaintiff (respondent).

BOHLING, Commissioner.

Cleo G. Ornder, plaintiff, had a judgment, in accordance with the verdict of the jury, against Clyde R. Childers, Jr., defendant, for $20,000 as a result of personal injuries sustained in an automobile collision when, as defendant was in the act of overtaking and passing plaintiff, plaintiff made a left turn onto an intersecting gravel road and defendant's automobile ran into the rear of plaintiff's truck. Plaintiff's case was submitted on primary negligence and under the humanitarian doctrine. The court, at defendant's request, gave instructions on the burden of proof, the credibility of witnesses and on the jury not being authorized to determine facts or issues, or base a verdict, on surmise, guesswork and speculation. Defendant questions the submissibility of plaintiff's humanitarian case, attacks each of plaintiff's verdict directing instructions, and contends the verdict is grossly excessive, requires a remittitur, and shows bias and prejudice against the defendant.

This automobile collision occurred on Highway No. 62, so far as here involved a straight and level east-west road, higher than the surrounding territory, from the point of collision in both directions, just west of the corporate boundary of Risco, Missouri. The time was about 11:45 a. m., February 23, 1955, a cold day. The pavement, concrete in the north lane and blacktop in the south lane, is 20 feet wide, with shoulders 7 feet wide. A road from Parma, which defendant traveled, connects with No. 62 at or east of the east city limits of Risco. For westbound traffic through Risco there are two 35 mile an hour speed limit signs, one at the east corporate boundary and another about the center of the town; and a "resume speed" sign just before one enters upon a bridge 50 feet long with a 20 foot wide roadway and steel bannisters. At the west end of this bridge is a city limits sign of Risco and a north-south gravel county road 18 or 20 feet wide intersects No. 62 about 10 feet west of the bridge but flanges out to the end of the bridge. There was no sign indicating the existence of this gravel road to westbound traffic on No. 62, but there was testimony the gravel road could be seen in the winter season for a distance of 100 yards to the east.

Plaintiff, 42 years old, was westbound in his 1953 Chevrolet standard pickup truck, on the north lane of No. 62 to his home a half mile south of the bridge on the gravel road. A stock rack, approximately 5 feet high, with stakes at the corners and eleven 4 inch horizontal slats fitted inside the bed of plaintiff's truck. The cab was about the same width as the bed of the truck, and a window, approximately 18 inches long and 16 inches wide, was at the center of the rear of the cab. The stock rack, right back of this rear cab window, had a 15 inch square hole and at its rear had two endgates; one extending all the way across the rear of the rack and the other, within the larger, was about 2½ feet wide and 4 feet 8 inches high, there being a 4 inch horizontal slat across the top at the rear of the stock rack. The small endgate was out and on the bed of the truck. A rear vision mirror extended out horizontally from the

corner of the cab so as to reflect the road back of the truck. There were no directional lights on the truck for indicating a desired turn.

Defendant was a sewing machine salesman, 29 years old, and lived at West Frankfort, Illinois. He, with Harold Blaise, a passenger, had come from Parma and was westbound on No. 62 in his 1953 Ford ranch wagon, in which he had a number of machines.

Both vehicles here involved were in good mechanical condition.

Plaintiff was first traveling 15 m.p.h. As he approached the gravel road he lowered his left cab window and gave an arm signal for a left turn about 50 or 60 feet east of the bridge. He slackened his speed to 5 m.p.h. and raised the window as he proceeded across the bridge. There was no interfering eastbound traffic. Plaintiff testified that he did not look in the rear vision mirror on the side of his cab; that he could stay under the wheel and look out of the cab's rear window; that "as I started to turn" he looked back east through the window of his cab, the 15 inch square opening in the stock rack back of the cab window and the small endgate opening; that he saw the north lane of No. 62, "that's all I was looking for"; that he saw nothing in the north lane behind him; that "I just glanced back and turned back and went to turning"; that he did not look back any more after he started to make his turn. Plaintiff did not know exactly but estimated the front of his truck was approximately 8 feet from the west end of the bridge when he started his left turn and 2 to 4 feet therefrom when he crossed the center line. At no time prior to his turn was any part of his truck south of the center line of No. 62.

Defendant, westbound, had gained on plaintiff and turned onto the south lane of No. 62 to overtake and pass plaintiff. There was testimony from which the jury could find that defendant started applying his brakes when plaintiff "pulled over." While plaintiff was making his turn he heard "tires a-squealing." He heard no horn. Plaintiff was still traveling 5 m.p.h. The left front of defendant's ranch wagon struck the rear of plaintiff's truck when the front of the truck was near the center of the gravel road and its rear was about 10 feet west of the bridge and lacked only 4 to 5 feet of clearing the south lane of No. 62. The rear of the truck was knocked around to the west, which caused the truck to roll backwards down the south shoulder of No. 62 and stop, headed north, in the ditch west of the gravel road.

Patrolman J. L. Petty, plaintiff's witness, testified that at the scene defendant told him he had been traveling 50 to 55 m.p.h.; "'I tried to stop and couldn't stop soon enough.'" At the trial defendant estimated his speed at 45 to 50 m.p.h. when plaintiff turned. The debris was 10 feet west of the bridge, and near but south of the center line of No. 62. Defendant's car left skid marks 137 feet long in the south lane of No. 62, leading up to the debris, and 38 feet of additional skid marks up to where it stopped.

■ In determining whether plaintiff made a submissible humanitarian case, so far as here involved, we take plaintiff's probative evidence as true, and give plaintiff the benefit of all legitimate inferences from all the evidence. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633 [3]; Fisher v. Gunn, Mo., 270 S.W.2d 869, 873 [2–5].

■ Plaintiff submitted his recovery under the humanitarian doctrine on defendant's ability to have avoided the collision by turning to his right. Defendant stresses that the evidence is insufficient to sustain a finding that he had the present ability, with the means at hand, to have averted the impending injury, without injury to himself or others, the third constitutive element mentioned in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484 [2]. Paydon v. Globus, Mo.App., 255 S.W.2d 61, 63 [5–7], on transfer, Mo., 262 S.W.2d 601, 604; Cacioppo v. Kansas City Pub. Serv.

Co., Mo.App., 234 S.W.2d 799, 801 [3]; Vietmeier v. Voss, Mo., 246 S.W.2d 785, 790. Defendant's automobile left 137 feet of skid marks in the south lane east of the debris. If a different time is not affirmatively established, courts have recognized three-quarters of a second as the normal reaction time. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788 [5]; Hendershot v. Minich, Mo., 297 S.W.2d 403, 407 [5]. In these circumstances the jury could find defendant was 186 or more feet from the point of impact when he recognized plaintiff's peril. At the time of the impact defendant had the whole of the north lane and 5 feet of the south lane, a total of 15 feet, in which to have swerved his automobile and avoided striking plaintiff's truck. We have said: "It is too generally and well known to require formal proof that present day automobiles respond quickly and accurately to the touch of the driver's hand on the steering wheel. The necessary impulse may be applied in an instant." Brown v. Callicotte, Mo., 73 S.W.2d 190, 193 [1]. Perry v. Dever, Mo., 303 S.W.2d 1, 7 [13]; Goggin v. Schoening, Mo.App., 199 S.W.2d 87, 94 [7]. The issue may be close but we think defendant's cases are distinguishable on the time and distance involved. We conclude we may not hold as a matter of law that an intelligent jury of the present day was not authorized to find upon a consideration of the evidence in the most favorable light to plaintiff that it was possible, after defendant saw or should have seen plaintiff in a position of imminent peril, for defendant, without injury to himself or others, to have avoided the collision in the exercise of the highest degree of care by swerving his automobile to his right.

Plaintiff's humanitarian instruction, so far as material here, read: "The court instructs the jury that if you find * * * that as plaintiff, Cleo George Ornder, was operating his motor vehicle in a generally westerly direction along Missouri Highway No. 62, and *as he approached the intersection mentioned in evidence, he came into and was in a position of imminent peril of* *collision with the automobile being operated by defendant Childers* * * *."

Defendant attacks the italicized portion of the instruction, and argues that it unduly broadened the imminent peril zone, and failed to hypothesize facts essential to a plaintiff's verdict.

Plaintiff relies on the submissions sustained in the following cases: "[A]nd if you find further that as Roy Harrington approached and went upon said railroad crossing ahead of said approaching train he was then in a position of imminent peril and danger and was oblivious thereto * *." Harrington v. Thompson, Mo., 243 S.W.2d 519, 524 [6–13]. "[A]nd if you further find that as deceased approached and went upon said railroad crossing ahead of said approaching train, he was then in a position of imminent peril and danger and was oblivious thereto * * *." Hillhouse v. Thompson, 362 Mo. 700, 243 S.W.2d 531, 537 et seq. The word "approaching" or "approached" was not used in the instruction in Newman v. St. Louis Public Service Co., Mo., 244 S.W.2d 45, 46, 49. In the first two of the above cases the plaintiff was injured while crossing defendant's tracks and came into a position of imminent peril as he approached the tracks. In the other case plaintiff was in the street near defendant's tracks and defendant's operator timely recognized the danger.

■ It is well stated, omitting the citations, in Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 683 [2–4]:

"The first and basic fact of liability under the humanitarian doctrine is a position of imminent peril. * * * 'The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril.' * * * It is only when such imminent peril arises that the humanitarian doctrine, blotting out antecedent negligence, seizes upon the then existing situation and imposes a duty *thereafter*

to exercise proper care to avoid infliction of the threatened injury. * * *"

"A defendant owes no duty to an oblivious plaintiff who is not in a position of imminent peril." Hilton v. Terminal R. Ass'n, 345 Mo. 987, 137 S.W.2d 520, 522 [5], 523.

■ The present plaintiff's position of imminent peril did not arise by reason of his approach to the intersecting gravel road. So long as plaintiff and defendant continued their westwardly course in their respective lanes of No. 62, plaintiff in the north and defendant in the south lane, no imminent peril situation existed. Automobiles on two-lane highways continuously overtake and pass other automobiles in their proper lanes without giving rise to an imminent peril situation. Plaintiff did not come into a position of imminent peril at least until he began his turn to the left from the north lane across the path of defendant's overtaking automobile in the south lane, and plaintiff should have but did not so submit his humanitarian case. Shirley v. Norfleet, Mo., 315 S.W.2d 715, 723 [3, 4]; Paydon v. Globus, Mo.App., 255 S.W.2d 61, 65, same case, Mo., 262 S.W.2d 601, 603; Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 683 [7], and cases there cited. Plaintiff created the situation of danger by changing the course of his truck to his left and the imminent peril zone should be limited to and not extended beyond the point where the humanitarian doctrine became operative. Cases last cited and, by analogy, Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 51 [4]; Cable v. Chicago, B. & Q. R. Co., 361 Mo. 766, 236 S.W.2d 328, 334 [4, 5], among others. The instruction did not set forth the essential factual hypothesis for guiding the jury in determining when plaintiff entered a position of imminent peril. Consult the plaintiff's approved instruction in Melenson v. Howell, 344 Mo. 1137, 130 S.W.2d 555, 559 [12], and defendant's approved instruction in Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562, 568 [7–14].

In view of the instant record, the presentation of the issues, and our lack of knowledge as to the course this case may hereafter take, we have concluded that there should be a retrial of plaintiff's claim against defendant on liability and damages without specifically determining the attacks against plaintiff's two other instructions, or the propriety of a certain jury argument by plaintiff's counsel, or the size of the verdict. Certain of the present issues should not and others well may not recur. For instance, plaintiff predicated a recovery on defendant's primary negligence in failing to sound a warning before starting to pass plaintiff's vehicle. That submission was based on Section 304.016, subd. 1(1) RSMo 1949, V.A.M.S., reading: "An operator or driver overtaking and desiring to pass a vehicle shall sound horn before starting to pass except in cities where prohibited by ordinance." See Laws 1953, p. 589, § 304.020, subd. 7(1). Section 304.020 was formerly § 8385, R.S.Mo.1939, § 7777, R.S.Mo.1929, and Laws 1921, 1st Ex.Sess. 93, § 21. Plaintiff pleaded a failure to warn under the humanitarian doctrine and testimony of a failure to warn was admissible; but there is no charge of primary negligence based on a failure to warn in plaintiff's petition. Plaintiff's position is that the issue was tried by the parties without objection and falls within section 509.500, Id. We find no evidence of record whether the sounding of a horn had been prohibited or not by any ordinance provision of Risco; and in this state of the record a holding that the issue was thoroughly tried, as argued by plaintiff, is questionable. An action predicated upon a liability given by a statute should come within the terms of the statute. Wilhelm v. Hersh, Mo.App., 50 S.W.2d 735, 738 [1]; Illinois Power & Light Corp. v. Hurley, 8 Cir., 49 F.2d 681, 684 [5], certiorari denied 284 U.S. 637, 52 S.Ct. 19, 76 L.Ed. 541. The whole of the enactment of 1953 (Laws 1953, p. 587, § 304.020) regulates the use of vehicles on the highways.

The judgment is reversed and the cause is remanded for new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.