David Paul KIRKS, a minor, by Peter C. Kirks, his next friend, Respondent,

v.

Alvin T. WALLER, Appellant.

No. 48107.

Supreme Court of Missouri,
Division No. 2.
Jan. 9, 1961.

John M. Kilroy (Shughart, Thomson, Stark & Kilroy, Caldwell, Blackwell, Oliver & Sanders, Kansas City, of counsel), for appellant.

Paul C. Sprinkle, Richard P. Sprinkle, and John P. Ryan (Sprinkle, Carter, Sprinkle & Larson, Kansas City, of counsel), for respondent.

BOHLING, Commissioner.

■ David P. Kirks, a minor, by his father as next friend, sued Alvin T. Waller for $50,000 damages for injuries received when struck by a truck operated by defendant. The jury returned a unanimous verdict for defendant. The court granted plaintiff a new trial for error in giving instruction No. 5. Defendant has appealed, and contends said instruction was not erroneous and that plaintiff failed to make a case on the submitted negligence that "defendant could have swerved said truck and given a warning of its approach" under the humanitarian doctrine. If plaintiff failed to make a submissible case, any error in defendant's instructions was immaterial and the court erred in granting plaintiff a new trial. Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824, 830 [8]; Graves v. Atchison, T. & S. F. R. Co., 360 Mo. 167, 227 S.W.2d 660 [3], and cases cited.

Plaintiff was injured about 4:40 p. m. August 31, 1956, on 87th Street, an east-west street, in Jackson County at the entrance to the Benjamin Stables. The Stables border 87th on the south and are a half block or more east of Hillcrest, a north-south street. Eighty-seventh Street has an 18-foot concrete pavement with shoulders 5 to 6 feet wide on each side. A drive, wide enough for two cars, leads southwardly from the concrete to the Stables and a long barn extends eastwardly from this entrance along 87th Street. Several driveways extend from the pavement to residences north of 87th Street.

in the vicinity of the entrance to Benjamin Stables, one being almost opposite said entrance. It is upgrade for eastbound traffic from Hillcrest to this entrance and then slightly downgrade to the east.

Mr. Kirks had taken his children to the Benjamin Stables to ride horseback. Plaintiff, who was about 5 years old, was returned to the Kirks car on the stable lot when he decided not to ride, and Mr. Kirks took the other children riding.

Defendant, a carpenter, and three men, who had worked together since 1948, finished work for the week about a half mile or more east of the Benjamin Stables. Defendant took his brother's 1953 GMC half-ton pickup truck to proceed west on 87th to get some "cokes" for the group. There was no westbound traffic ahead of defendant.

Three passenger automobiles, operated by James W. Menaugh, Richard H. Kelly, and Orville C. Repper, were eastbound in that order on 87th. Menaugh and Kelly were Jackson County Deputy Sheriffs. They were plaintiff's witnesses. Repper, an electronics engineer, was driving a 1950 4-door Mercury. He was a witness for defendant.

As the vehicles approached the entrance to the Benjamin Stables, the speed of the eastbound cars was estimated at 20 to 25 m. p. h. and the speed of defendant's truck was estimated at 30 to 35 m. p. h. The place involved was in a 45 m. p. h. speed zone.

Menaugh saw plaintiff at the entrance to the Benjamin Stables. When he was within 15 to 20 feet of plaintiff, plaintiff suddenly ran out on the pavement in front of his car. Menaugh tried to but didn't have time to stop and, had plaintiff not stopped and jumped back, his car would have struck plaintiff. Menaugh, thinking plaintiff would run out in front of another car, immediately pulled onto the south shoulder and parked about 3 or 4 car lengths, 50 to 60 feet, east of the entrance. He did not know whether he got all the way off the pavement. He continued to watch plaintiff through his rear view mirror. Plaintiff was "more or less prancing and trying to go," "acted like he was wanting to run across the road," and was edging to the west. Menaugh first saw defendant as defendant was passing him after he was parked, and believed Kelly had but was sure Repper had not passed him. He estimated that, as the Kelly and Repper cars passed him, the Repper car was approximately 2 or 3 car lengths, 30, 35 feet, back of the Kelly car. Menaugh saw plaintiff start running across the road behind the Repper car as soon as, it looked like, Repper passed plaintiff, saw plaintiff "come out from behind it [the Repper car] onto the other part of the pavement, and then I heard the brakes squealing." Plaintiff did not come out from in front of the truck. The truck stopped. Menaugh immediately turned around and went back to the scene. He estimated that the collision occurred 75 to 80 feet "back" of his parked car, about the middle of the north half of the pavement; that the front of the truck was west, he did not know how far, of the stable driveway, and plaintiff was on the pavement within approximately 3 feet of its north edge and approximately 8 or 9 steps in front of the truck. He testified that his car as he pulled onto the shoulder and on the shoulder would obstruct defendant's view to some extent and, as the occurrence developed, the Kelly and Repper cars passed between plaintiff and defendant.

Kelly testified Menaugh started to stop and he then first saw plaintiff jump back from in front of Menaugh's car. Plaintiff was standing 5 or 6 feet south of the edge of the concrete when he passed. He first became conscious of a car following him when he came alongside Menaugh's car, and was then traveling about 10 m. p. h. He testified that the truck passed him after he passed plaintiff; that Menaugh pulled onto the shoulder. "Q. Was that after the truck passed you? A. Yes, sir. Q. Then you said you went on down and made a turn and headed back west? A. Just at that time, it all happened so quick, is when I heard the tires squeak, and something told

me that that child had run in front of that truck." Kelly made a "U" turn, "anywhere between fifty and a hundred feet" east of the entrance to the stables to return to the scene.

Repper was first some distance behind the Kelly car. He noticed plaintiff run out on the road and back to approximately 10 feet south of the concrete. When Menaugh's car slowed, witness slackened speed and got real close, within 5 or 10 feet of the Kelly car. The cars were then traveling 10 to 15 m. p. h. He looked in his rear view mirror and saw plaintiff "take out," start running north across the street "within 10 feet" behind his car. Plaintiff, based on the cross-examination, puts this distance in his brief at 10 or 15 feet. At approximately that time he saw defendant's westbound truck within about 10 or 15 feet of his car, sensed there would be an accident, looked in his rear view mirror, and saw the impact. The truck continued on for 10 or 15 feet after striking plaintiff.

Defendant Waller testified that the truck was about 7 feet wide; that he was traveling 30 to 35 m. p. h.; that he was looking ahead all the time as he was proceeding westwardly; that he saw to his right and to his left; that the eastbound cars, which were moving slowly in the south lane, obstructed his view of the driveway and he did not see plaintiff on the driveway; that plaintiff, when he first saw him, was very close to, approximately in the center of, within a step or two of the center of 87th Street, running as fast as he could go across the pavement, and the truck seemed to be right on top of plaintiff, 50 feet, or maybe more, from plaintiff; that he, defendant, immediately hit his brakes, locked his wheels and left skid marks approximately 58 feet long; that plaintiff never stopped running; that he was not able to stop the truck, struck plaintiff, and continued on some distance after the impact before he could stop.

The testimony was that defendant did not swerve his truck (defendant stating he did not have time) or sound his horn; that the skid marks were on the north half of the pavement, 58 feet in length, and practically straight; and that a dent caused by the truck striking plaintiff was just to the left of the center of the upper portion of the grille of the truck. The truck was in good mechanical condition.

Defendant had expert testimony, the only evidence on the issues, that it would take 76 feet to stop the truck when traveling 30 m. p. h. and 96 feet to stop it when traveling 35 m. p. h. and that the skid marks showed all the wheels on the truck had locked at the same time, and with the front wheels locked, it was impossible to swerve the truck in either direction.

▮▮ Our review of the submissibility of plaintiff's case is on the theory upon which plaintiff grounded a recovery. Quinn v. St. Louis Pub. Serv. Co., Mo., 318 S.W.2d 316, 323 [16]; Welch v. McNeely, Mo., 269 S.W.2d 871, 875. We review the evidence in the light most favorable to plaintiff, give plaintiff the benefit of all favorable inferences arising therefrom and disregard defendant's evidence unless it aids plaintiff's case. Daniels v. Smith, Mo., 323 S.W.2d 705 [2]; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633 [3, 4]. But the favorable consideration of the evidence rule calls for a consideration of all the facts shown by plaintiff, not merely part of them isolated from the rest (Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726 [1]; Walter v. Alt, 348 Mo. 53, 152 S.W.2d 135, 142 [8]); and it does not require courts to supply missing evidence, or disregard the dictates of common reason and accept as true that which obviously, under all the record, is not true, or to give plaintiff the benefit of any other than reasonable inferences (Wilkins v. Allied Stores of Mo., Mo., 308 S.W.2d 623, 629 [4]; Nance v. Atchison, T. & S. F. Ry. Co., 360 Mo. 980, 232 S.W.2d 547, 552 [4]; East v. McMenamy, Mo., 266 S.W.2d 728, 731 [2, 3]).

▮ The peril as a basic fact of the humanitarian doctrine "must be imminent that is, certain, immediate, and impending;

it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril." Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420 [2], 421. Welch v. McNeely, Mo., 269 S.W.2d 871, 876; Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 683. No duty arises under said doctrine so long as a plaintiff is only "approaching" a position of imminent peril. Welch v. McNeely, supra. A plaintiff, adult or child, must remove his case from the field of speculation, conjecture and surmise. Lee v. Jones, 181 Mo. 291, 79 S.W. 927 [3]; Hartlage v. Halloran, Mo.App., 331 S.W.2d 197 [1]; Batson v. Ormsbee, supra.

Plaintiff submitted his case on the theory "defendant saw or by the exercise of the highest degree of care on his part could have seen the plaintiff" in a position of imminent peril "in time thereafter so that by the exercise of the highest degree of care on the part of defendant * * *, defendant could have swerved said truck and given a warning of its approach" and thereby have avoided injuring plaintiff. His submission was that said two acts in combination constituted defendant's negligent conduct. Frandeka v. St. Louis Pub. Serv. Co., 361 Mo. 245, 234 S.W.2d 540, 549 [17]; Nelson v. O'Leary, Mo., 291 S.W.2d 142, 148 [7]; Lyons v. Taylor, Mo.App., 333 S.W.2d 346, 353 [3].

Plaintiff's presentation is based on plaintiff passing 10 or 15 feet behind the third eastbound car from a point 10 feet south of the pavement at a speed of 5 m. p. h., or 7½ feet a second, on reaction time of three-fourths of a second, and on a time lapse of 3 or more seconds for plaintiff to run to the point of impact, approximately 23½ feet. This speed element is based on plaintiff's examination of defendant's witness Repper that he thought a 5-year old boy would run 5 m. p. h. or 7½ feet a second when a man was trying to catch him, notwithstanding the witness stated he did not have a very accurate judgment on that subject; that he believed he was not qualified to testify, and "would hate to venture a guess" as to how fast plaintiff was running. We doubt if this constituted substantial evidence as to plaintiff's speed. We have considered, absent proof, a jury may infer that a 5-year old boy could run a short distance at a speed of 10 m. p. h. (Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788), and that a 3-year old girl would run between 4 and 6 m. p. h. (De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 635). For reaction time of an adult being three-fourths of a second, see West v. St. Louis-S. F. R. Co., Mo., 295 S.W.2d 48, 54 [8].

Plaintiff was not in imminent peril of being struck by defendant's truck while on the driveway and the eastbound cars were passing him. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788 [4]; Partney v. Ayers, 238 Mo.App. 764, 187 S.W.2d 743, 747 [4], and cases cited.

There is no evidence in the record before us that defendant saw plaintiff when he started to run across 87th Street. Plaintiff's witness Menaugh, who had an unobstructed view of plaintiff along the south shoulder of the street, saw plaintiff start to run, disappear behind the Repper car, again come into view north of the Repper car, and then pass out of sight in front of defendant's truck. The testimony of plaintiff's as well as defendant's eye-witnesses is to the effect that the eastbound cars, particularly the Repper car, prevented defendant from seeing plaintiff when he started to run across 87th Street when 10 or 15 or more feet back of the Repper car. There is no substantial evidence of record upon which to base calculations on plaintiff's imminent peril being discoverable by defendant when plaintiff, 10 feet south of the pavement, started to run across the street or prior to his coming into view from behind the Repper car to a westbound motorist exercising the highest degree of care in defendant's situation.

"Of course, 'under our practice the jury must find that plaintiff *was* in peril, and it must then determine whether such peril was, in fact, discoverable * * *

soon enough for defendant to have avoided the collision by the use of the means submitted.'" Daniels v. Smith, Mo., 323 S.W.2d 705, 712 [8]. Taylor v. Missouri, K. & T. R. Co., 357 Mo. 1086, 212 S.W.2d 412, 414 [1]; and see, among others, approved instructions in Oliver v. Morgan, Mo., 73 S.W.2d 993, 995 [5, 6]; Wells v. Raber, 350 Mo. 586, 166 S.W.2d 1073, 1075 [1–3]. A possibility that defendant might have avoided injuring plaintiff is not sufficient under the humanitarian doctrine. Findley v. Asher, Mo., 334 S.W.2d 70, 74 [6] and cases cited.

■ With the impact occurring about the middle of the westbound lane as indicated by plaintiff's witness Menaugh and as submitted here by plaintiff and plaintiff first coming into defendant's vision very close to, approximately in the center of, within a step or two of the center of the pavement, plaintiff traveled a very short distance after his imminent peril was discoverable. For a warning to be effective consideration is to be given to the time necessary for defendant to react upon the appearance of plaintiff's imminent peril, a determination of his course of action, the time to put such determination into action and sound a warning, the time for the sound to travel to plaintiff and for plaintiff to hear and react to the warning and determine his course of action, and the time for plaintiff to effectively put his intention into action and avoid the collision. West v. St. Louis-S. F. R. Co., Mo., 295 S.W.2d 48, 55. Taking a reaction time of three-fourths of a second each for defendant and for plaintiff, plaintiff, at a speed of 7½ feet a second, would have traveled 11.25 feet in 1½ seconds before reacting to defendant's warning. Defendant's truck traveled some distance after striking plaintiff before defendant was able to stop. With defendant's skid marks 58 feet in length, and considering his reaction time, defendant must have been in the vicinity of plaintiff's witness Menaugh (who saw plaintiff disappear from view in front of defendant's truck, which was about 7 feet wide) when plaintiff first came into defendant's view from behind the Repper car. If plaintiff were at the center of the eastbound lane when his peril was discoverable by defendant, he was about 9 feet and less than 1½ seconds from the point of impact. We find no substantial evidence that plaintiff's imminent peril was sooner discoverable by defendant.

By predicating a recovery upon defendant's swerving his truck and warning plaintiff of its approach, plaintiff submitted cooperative action on his part to avoid the collision. When plaintiff's peril was discoverable, an eastbound car or cars were to defendant's left and plaintiff was running in the direction of a swerve by defendant to the right. It is stated in Vietmeier v. Voss, Mo., 246 S.W.2d 785, 790: "[T]he actions of a five year old boy are wholly unpredictable. The courts hold that a five year old boy is too young to be guilty of contributory negligence, Hults v. Miller, Mo.App., 299 S.W. 85, 89, and for the very reason that he has no appreciation of danger. If there had been more time than 1¼ seconds, what reaction a five year old boy, running after a ball might have had, if a horn had been sounded, is entirely speculative." The 5-year old boy in the Vietmeier case ran about 25 to 30 feet (two or three times farther than this plaintiff after his peril was discoverable) and defendant Voss was driving at a speed of 25 to 27 m. p. h. (a lesser speed than this defendant). Any increase in the instant plaintiff's speed from 5 up to 10 m. p. h. would not strengthen plaintiff's case. In the Vietmeier case we held plaintiff had not removed his humanitarian case from the realm of speculation. We reach the same conclusion in this case on defendant's ability to have avoided the collision by swerving his truck and warning of its approach or, as suggested by plaintiff, to have driven this about 7-foot wide truck "3 or 4 feet to the north of the pavement on the shoulder," about 6 feet wide, with safety under the humanitarian doctrine.

In his argument plaintiff makes the assertion in the alternative: "or it [the truck] could have been driven into any one of the various driveways referred to." Plaintiff does not develop the evidence on the quoted alternative ground of recovery, i. e., defendant's ability to make a right angle turn into a driveway leading to a residence on the north side of the highway. We have considered the evidence did not remove defendant's ability to avoid the collision on the submitted combination of negligent acts, failing to swerve and sound a warning, from speculation, and are of opinion said submission did not include an additional alternative duty by defendant to make a right angle turn into one of said driveways if the evidence were sufficient to submit said issue. Defendant had a very short time in which to act effectively, very little over a second after plaintiff's imminent peril was discoverable, in which to swerve and sound a warning, each of which in the circumstances of record would consume attention, ability, and time. We said in the Vietmeier case (246 S.W.2d loc. cit. 789, 790): "Inasmuch as in the available time it was possible to do only one of the two things, and defendant did do one of those things, it was not negligent for defendant not to have done the other thing." This is applicable to plaintiff's alternative assertion quoted above, and has been followed in Breshears v. Myers, Mo., 266 S.W.2d 638, 640, and Pitts v. Garner, Mo., 321 S.W.2d 509, 515.

Plaintiff cites Daniels v. Smith, Mo., 323 S.W.2d 705, 706 [2]; Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918, 923 [4]; and Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167, 172 [6–8]. Our conclusions on the facts of the instant case are not out of harmony with plaintiff's authorities. For instance, in the Daniels case defendant drove his car 100 feet at not over 20 to 25 m. p. h. and struck an oblivious plaintiff who was standing in the street with his back to defendant instead of swerving his car a foot or more to avoid the collision (323 S.W.2d loc. cit. 708, 709).

The verdict was for the right party. Accordingly, the order granting a new trial is set aside and the cause is remanded with directions to reinstate the verdict of the jury and enter judgment thereon.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.