Rose Marie BAFARO, (Plaintiff) Respondent,

v.

Josephine PEZZANI, (Defendant) Appellant.

No. 31382.

St. Louis Court of Appeals.
Missouri.

March 17, 1964.

James J. Amelung, Holtkamp, Miller, Risch & Amelung, St. Louis, for appellant.

Joseph J. Dolgin, O'Connor, Dolgin & Godfrey, Clayton, for respondent.

G. DERK GREEN, Special Commissioner.

The plaintiff, Rose Marie Bafaro, filed suit for $9,500 for injuries received in

a collision between the car she was driving and one driven by defendant. The petition alleged both primary negligence and humanitarian negligence, but plaintiff submitted the case only on the charge of humanitarian negligence. The jury returned a verdict for defendant. Thereafter, the court granted plaintiff a new trial for error in giving defendant's sole cause Instruction No. 11. Defendant has appealed and raises two points: First, that plaintiff failed to make a submissible case of humanitarian negligence and secondly, that Instruction No. 11 was not prejudicially erroneous. If defendant's first contention is correct and plaintiff failed to make a submissible case, error, if any, in the instruction was immaterial and a new trial should not have been granted. Kirks v. Waller, Mo., 341 S.W.2d 860.

■ On the first point, we must state and review the evidence in a light most favorable to plaintiff, give plaintiff benefit of all favorable inferences arising therefrom and disregard defendant's evidence unless it aids plaintiff's case. Brown v. Wooderson, et al., Mo., 362 S.W.2d 525; Kirks v. Waller, Mo., 341 S.W.2d 860; Begley v. Connor, Mo., 361 S.W.2d 836.

The collision occurred on January 14, 1960, sometime between 8:30 and 8:45 A.M., in the 5300 block of Wilson Avenue, an east-west street between Macklind, the first street to the west, and Edwards, the first street to the east, in the City of St. Louis. The defendant, Josephine Pezzani, was headed eastbound on Wilson and collided with the plaintiff's automobile which had been parked at the south curb of Wilson Avenue and which was pulling out, or attempting to pull out, at the time of the collision. The width of Wilson Avenue at this point is not precisely established, but it is reasonably definite that with cars parked at both curbs, there was not room for two cars to meet and pass in the traveled portion remaining, although one witness thought four cars could be placed side

by side in the street. On the day of the collision, plaintiff had taken her daughter to nursery school and had parked her car on the south side of Wilson Avenue headed east. Cars were parked in front of and behind plaintiff's car at the south curb and directly opposite her car on the north curb. There was a slight downgrade to the east. It had rained before the collision and it was misty at the time. The plaintiff and others were carrying umbrellas, and plaintiff's windshield wiper was on.

After plaintiff took her daughter into the nursery school, she returned to her car, got into it, closed the umbrella, threw it into the back seat, and closed the door. She observed a car parked behind her and another about three feet in front. She moved the shift lever from a "park" position to "neutral," started the motor and released the brake. She looked at her inside rear view mirror but could not see satisfactorily; then she looked in her outside rear view mirror but could not see satisfactorily. With the car in neutral and her foot on the brake, she permitted the car to roll forward down the slight grade so she could look toward the rear through the window, which was down about four inches. When she was five or six, or possibly ten, inches from the curb, she turned her head to look out the window and at that instant her car was struck by one being driven eastward by defendant. Plaintiff did not give any hand or directional signal and her lights were not on. She did not see defendant's car before the instant of the collision and then it was so close she "could not put her hand between the two cars." She cannot estimate defendant's speed, but said that defendant admitted at the time to going 30 miles per hour. The right front fender of defendant's car struck the left side of plaintiff's car from the left door forward. The defendant's car stopped about one car length ahead of plaintiff's car. There were no cars coming from the east and no other moving traffic. Plaintiff estimated that five seconds elapsed from the time she got into

her car until the collision and that two or three seconds elapsed from the time she started to move forward until the collision.

Defendant contends that there was no substantial testimony from which the jury could reasonably find where the plaintiff came into a position of imminent peril and consequently where the defendant's duty to act began. To support this theory, defendant points out that there was no testimony in feet as to the width of Wilson Avenue, the width of plaintiff's car, defendant's car, or the car parked at the north curb; that there was no testimony of the speed of plaintiff's vehicle as it pulled out, or testimony that the defendant had the time, ability, or place to swerve her car to avoid the collision.

■ Plaintiff does not question the lack of evidence as to the measurements in feet as to the width of the street or the width of the respective cars, but relies upon the testimony that the street was almost four cars wide and possibly four cars could be placed side by side, but two cars could not meet and pass with cars parked on both sides. Plaintiff contends that this was substantial evidence upon which the jury could find that defendant had a safe place to swerve her car to the left or north of its path to avoid the collision. On this point we agree with the plaintiff.

On the time factor, plaintiff further undertakes to sustain a submissible case upon this theory: According to her estimate, two or three seconds elapsed from the time she released the brake and started to move forward until the impact. Taking the time as three seconds and the speed of defendant's car as 30 miles per hour, as plaintiff said defendant admitted, at the time plaintiff's car started to move, defendant was 135 feet back of plaintiff's car; or taking the speed of 20 to 25 miles per hour, as defendant testified, she was 90 to 100 feet away; or taking the slower speed of 20 miles per hour and the time defendant estimated she had, the distance would be 30 feet and in either case, plaintiff contends this gave de-

fendant time and space to swerve the slight degree necessary to avoid the collision.

■ Both parties cite authorities to the effect that under the humanitarian rule the first and basic fact of liability is plaintiff's position of imminent peril. "The peril as a basic fact of the humanitarian doctrine 'must be imminent, that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril.' (Cases cited) No duty arises under said doctrine so long as the plaintiff is only 'approaching' a position of imminent peril. * * * A plaintiff, adult or child, must remove his case from the field of speculation, conjecture and surmise." Kirks v. Waller, 341 S.W.2d 860, l. c. 863, 864, and cases there cited. "Of course, 'under our practice the jury must find that the plaintiff *was* in peril, and it must then determine whether such peril was, in fact, discoverable * * * soon enough for defendant to have avoided the collision by the use of the means submitted * * *.'" Daniels v. Smith, Mo., 323 S.W. 2d 705, 712; Taylor v. Missouri, K & T Railroad Company, 357 Mo. 1086, 212 S.W. 2d 412, 414.

Plaintiff, in making the computations stated above, assumes the duty of defendant to take action to swerve her car the instant plaintiff's car started to roll forward, at the very beginning of a three second period she estimates elapsed after the roll forward started and before the collision. Plaintiff also attempts to extend the zone of peril because of the alleged obliviousness of plaintiff, because she testified she did not see defendant and cites Yarrington v. Lininger, Mo., 327 S.W.2d 104, at page 110, where the court stated: "But, when the plaintiff is oblivious, it has been said that the zone of imminent peril is widened to that point where it was or should have been reasonably apparent to the defendant in the exercise of the required degree of care that the plaintiff was oblivious of the approach of defendant's moving vehicle and was intent on continuing across its path."

Plaintiff further relies upon Wabash Railroad Company v. Dannen Mills, Inc., 365 Mo. 827, 288 S.W.2d 926, at page 929, where the Supreme Court said: "Thus the greater the speed of the approaching vehicle, the wider the zone of imminent peril; but obliviousness (with reasonable appearances of obliviousness) widens it still farther. In such a case as this, the zone of imminent peril began and the duty of the engineer arose when it was or should have been reasonably apparent to him that the truck driver was oblivious of the approaching train and was intent on continuing across its path." Plaintiff reasons that taking the evidence in the most favorable light to plaintiff's case, three seconds elapsed from the time the plaintiff's car started to move forward and the time of the collision; that defendant's car traveling at 30 miles per hour was 135 feet away; and that this estimate of elapsed time and the admission of speed on the part of defendant was sufficient to warrant the jury in so finding. Plaintiff contends that this time and distance, or even the shorter time of two seconds and the slower speed of 20 miles per hour, afforded the defendant adequate time, distance, and space to swerve around plaintiff's car. To support this contention without additional testimony, plaintiff cites Goggin v. Schoening, Mo.App., 199 S.W.2d 87, l. c. 94, where the court said: "The mobility of modern passenger cars, and the celerity with which they may be swerved, and what may be done in a second or fraction of a second to avoid impending danger, the distance such cars will travel at a given rate of speed at a given time, and the fact that a car when driven at a lower rate of speed can be more easily and securely controlled and managed than when driven at a high rate of speed, are matters of common knowledge." Plaintiff in her reasoning assumes the duty on defendant to take action to swerve her car the instant plaintiff's car started to roll forward at the curb, at the very beginning of the three second period. "In the absence of obliviousness, the position or danger zone of imminent peril of a person approaching the path of a moving vehicle reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it." Lotta v. Kansas City Public Service Company, 342 Mo. 743, 117 S.W.2d 296, l. c. 300, and cases there cited.

In the instant case, we cannot find that there was any evidence upon which the jury could have found that plaintiff was in a position of discoverable, imminent peril at the very time she started to roll forward. If plaintiff was in actual peril because of her obliviousness, it is not shown by the evidence that such peril was apparent or discoverable to defendant. Plaintiff had looked in her inside rear view mirror, had looked in her outside rear view mirror, had her window rolled down for the purpose of observing traffic to the rear, and was moving at an undetermined but necessarily slow speed. With her foot on the brake, by her own efforts she could have stopped short of the path of defendant's car at any time. There was nothing to indicate to the defendant that she would not do so. She moved less than three feet forward and less than one foot to the left. She was not in a position of imminent peril as she sat in her car before starting the roll forward. She was not in a position of impending peril until she reached very near the point of impact. There is no evidence to warrant a finding that defendant could have swerved her car and avoided the collision after the plaintiff actually reached a position of peril, or after it became apparent to defendant that plaintiff was unable to or would not stop her vehicle before entering the path of defendant's automobile.

Having reached the conclusion that the plaintiff failed to make a submissible case of humanitarian negligence, it is not necessary to consider the alleged error in Instruction No. 11. The trial court should have sustained a motion for directed verdict for defendant. The verdict of the jury was for the right party. Accordingly, the order granting a new trial should be set

aside and the cause should be remanded with directions to reinstate the verdict of the jury and enter judgment thereon. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by G. DERK GREEN, Special Commissioner, is adopted as the opinion of the Court.

Accordingly, the order granting a new trial is set aside and the cause is remanded with directions to reinstate the verdict of the jury and enter judgment thereon.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.