Gracie HASTINGS, Administratrix In the Estate of William Masters, and Agnes Masters, Plaintiffs-Appellants,

v.

James COPPAGE, Defendant-Respondent.

No. 51758.

Supreme Court of Missouri,
Division No. 2.

Feb. 13, 1967.

Jack O. Edwards, James R. Robison, Dempster, Edwards & Robison, Sikeston, for appellants.

Blanton, Blanton & Rice, Bernard C. Rice, Sikeston, for respondent.

STORCKMAN, Chief Justice.

This action in two counts arises out of an alleged collision between the defendant's automobile and William Masters in Canalou, Missouri, on August 19, 1964. Mr. Masters died nine days later. The first count is for wrongful death by the widow Agnes Masters. The second count is for Mr. Masters' personal injuries brought by Gracie Hastings as administratrix of the estate of William Masters, deceased. Each count sought damages in the sum of $25,-000. At the conclusion of plaintiffs' evidence on liability the trial court directed a verdict for the defendant and the plaintiffs appealed. The sole question on appeal is

whether the evidence was sufficient to make a submissible case.

The accident occurred on Main Street which runs generally in a north-south direction and is surfaced with a bituminous asphalt pavement 18 feet 10 inches wide. At the place in question there is a three-foot shoulder covered with gravel and grass. Adjoining the shoulder on the west is a shallow ditch. At the north edge of Canalou Main Street intersects with New Madrid County Route H which runs east and west. Mr. Masters, 83 years of age, lived on Route H. At about 7:30 a. m. on the day in question he left his home to walk to the post office about a quarter of mile distant. When he reached Main Street he walked south on the west side which was the right side of the highway in the direction he was going.

The plaintiffs' principal eyewitness, G. D. Drake, was seated with his wife Iris in the front seat of his automobile which was parked on the east side of Main Street headed north 150 to 200 feet south of where the accident happened. He had a clear view of Mr. Masters walking south on the west side of the highway. He also saw the defendant turn the corner from Route H onto Main Street at which time the defendant's automobile was moving about five to ten miles per hour. It continued at about the same speed until it overtook and stopped beside Mr. Masters. Asked to state "what happened" the witness Drake testified that Mr. Masters "was walking south on the right hand side of the road and Mr. Coppage turned the corner coming south also and just as Mr. Coppage got up to him, I believe he was going to stop and pick him up, and the windshield post on the right hand side of the car, and when he got to him and Mr. Masters just turned and there was the car." Mr. Masters "just turned and set down on the pavement, his left foot under his right leg." He was "right at the edge" when he sat down. Mr. Drake went immediately to the scene of the accident; when he got there Mr. Masters was leaning against the door of

the automobile. Mr. Masters said his leg hurt and asked Mr. Drake to pick him up and put him in the car which was done. Mr. Masters also said in the presence of Mr. Drake and others that "it wasn't Mr. Coppage's fault" and "he wanted to tell that Mr. Coppage wasn't at fault while he knew what he was doing."

The witness Drake estimated that the defendant's automobile was about 18 inches from the west side of the road as it was headed south. It did not get off on the shoulder at any time, or swerve to the right or left. The witness did not hear any horn sounded. He thought Mr. Masters was walking at the edge of the pavement. Just about the time the front of the windshield got even with Mr. Masters he turned into the car; the defendant did not turn his car into Mr. Masters. The defendant's automobile was not moved from the position in which it was stopped until after the highway patrolman arrived.

When Robert Ferrell Miller, a Missouri State Highway Patrolman, arrived the defendant's vehicle was on the highway with Mr. Masters in the back seat. He took measurements and the distance "from the west edge of the pavement to the nearest part of the automobile, front and rear," was ten inches. There was no damage to defendant's car. The west shoulder was three feet wide at the place where the car was sitting. Trooper Miller further testified that Mr. Masters "stated that he was walking on the edge of the road about one or one and a half foot from the edge." The defendant's statement was: "I really don't know what happened. I was going really slow. I generally stopped to pick him up every morning and I was going to pick him up this morning."

Gracie Hastings, a daughter of Mr. Masters, testified her father's hip was broken. After being in a hospital at Cape Girardeau for nine days members of Mr. Masters' family moved him to a hospital in Sikeston where he died shortly after arrival. The widow Agnes Masters testified that the de-

fendant came out to her home about four days after the accident and stated: "Well, I did hit the poor old fellow but I don't know how I done it. I don't know how I done it."

The plaintiffs read into evidence portions of the defendant's deposition wherein the defendant testified that he was driving a 1959 Chevrolet with good brakes; that he first saw Mr. Masters ahead of him when he, the defendant, turned south into town going seven to ten miles per hour; that he decreased his speed and went slower all the time; that he did not sound his horn or turn his car to the right or left; that Mr. Masters was walking off the blacktop on the west side of the road; that Mr. Masters "had been riding with me once in awhile to go to the Post Office. I put on my brakes to stop and he fell beside my car"; that the right front wheel was 18 inches from the west edge of the highway and the car was not moved from the time the defendant stopped until after Mr. Masters was put in the automobile. Four snapshot photographs of Main Street looking north and south were used to mark the place where the accident occurred. They tend to confirm the verbal description of the area given by witnesses and further show that the edge of the asphalt pavement is somewhat irregular and at places slightly raised above the adjoining shoulder which appears to have a somewhat uneven surface. The plaintiffs' amended petition alleged that Mr. Masters "was walking beside said roadway."

■ The trial court having sustained the defendant's motion for a directed verdict at the close of plaintiff's case, the evidence and all reasonable inferences therefrom must be reviewed in the light most favorable to the plaintiffs. Perry· v. Dever, Mo., 303 S.W.2d 1, 4(2). A cause may not be withdrawn from the jury unless the facts in evidence and the legitimate inferences which may be drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to dif-

fer. Nelson v. O'Leary, Mo., 291 S.W.2d 142, 147(4).

■ The plaintiffs' chief contention is that the defendant was guilty of humanitarian negligence in that "William Masters was walking on the roadway with his back to the defendant's automobile, and that the defendant, while driving ten miles per hour or less, had the pedestrian in full view as he drove towards him, covering more than 130 feet prior to colliding with him, without ever stopping, or swerving his automobile, or sounding his horn." The plaintiffs pleaded several grounds of primary negligence and in their written argument assert they do not intend to abandon the allegations, but they have not specified, briefed and argued any of them. Contentions not presented in the points to be argued in an appellate brief are abandoned and will not be considered. Sup.Ct. Rule 83.05(a), V.A.M.R.; Marshall v. City of Gladstone, Mo., 380 S.W.2d 312, 314(1); Ayres v. Keith, Mo., 355 S.W.2d 914, 919(6). A point is not properly presented for review if it is advanced for the first time in the argument portion of the brief. Frager v. Glick, Mo., 347 S.W.2d 385, 390(5). The only question for review is whether the plaintiffs made a submissible case under the humanitarian doctrine.

■ The essential elements of a submissible case under the humanitarian negligence doctrine have been well established since Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484, and as applied to this case are that (1) the pedestrian was in a position of imminent peril; (2) the motorist knew or should have known thereof; (3) the motorist after receiving or being charged with such notice had the present ability, with the means at hand, to avoid the impending injury to the pedestrian without injury to himself, his vehicle, or others; (4) the motorist failed to exercise due care to avert the injury; and (5) by reason of such failure the pedestrian was injured.

The plaintiffs contend that Mr. Masters was oblivious to his danger in that regard-

less of whether Mr. Masters was on the pavement or on the shoulder he and the defendant's automobile "were on a collision course," and that a jury could have found that the "position of imminent peril existed from the time the defendant turned the corner" from Route H onto Main Street, a distance of 138 to 144 feet from the place where the accident occurred. The principal fallacy with these contentions is that they disregard the fact established by all the evidence that the front portion of defendant's automobile did not come in contact with Mr. Masters. On the contrary the automobile drew alongside him to a point where the windshield post was about even with him and the automobile was practically stopped before Mr. Masters turned toward the car and fell or sat down in a position of leaning against its door. The evidence further shows that after the automobile drew abreast of Mr. Masters, it did not turn or move in his direction. The record is silent as to what part of the automobile, if any, came in contact with Mr. Masters before he fell.

■ The first and basic fact necessary to liability under the doctrine of humanitarian negligence is the existence of a peril that is "imminent" which means certain, immediate, and impending, and not remote, uncertain, or contingent, and the likelihood or bare possibility of injury is not sufficient to create "imminent peril"; it is only when such imminent peril arises that the humanitarian doctrine blots out antecedent negligence and seizes on the then existing situation and imposes a duty to exercise due care to avoid inflicting the threatened injury. Ornder v. Childers, Mo., 327 S.W.2d 913, 916(3); Bafaro v. Pezzani, Mo.App., 376 S.W.2d 631, 633(4); McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, 707(2); Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 778(4); Kirkham v. Jenkins Music Co., 340 Mo. 911, 104 S.W.2d 234, 236(3); Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373, 377–378(12).

The evidence does not support the plaintiffs' contention that Mr. Masters and the defendant's automobile were on a collision course regardless of whether Mr. Masters was walking on or off the pavement. The evidence establishes that the automobile was on the pavement at all times and there is no room for an inference to the contrary. The testimony as to Mr. Masters' position is rather ambiguous; there are indefinite references to the west side of the road and distances from the edge of the road and edge of the pavement. Mr. Drake testified at one time he "thought" Mr. Masters was walking at the edge of the pavement. The defendant testified Mr. Masters was off the pavement on the shoulder. We need not determine, however, whether he was off or on the pavement since it is evident that he was not in the path of the automobile or the defendant would not have been able to drive alongside him as was done according to all the evidence.

■ When a motorist and a pedestrian are not on a collision course and can safely pass unless one of them changes his course, the pedestrian is not in imminent peril even though he is oblivious of the approaching automobile and during such time the motorist owes no duty under the humanitarian doctrine. Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 778(6). This is further demonstrated by cases cited above. In Ornder v. Childers, Mo., 327 S.W.2d 917(4), the court stated: "Automobiles on two-lane highways continuously overtake and pass other automobiles in their proper lanes without giving rise to an imminent peril situation." It was held that imminent peril did not attach until the lead vehicle began a left turn. The other cases cited are to the same legal effect.

The plaintiffs have cited a number of cases in which the evidence showed that the plaintiff was in or about to enter the path of defendant's vehicle and it was held that a submissible humanitarian case was made. We have examined all of them but they are not persuasive of the sufficiency of the

evidence in this case and need not be discussed individually. Chastain v. Winton, 347 Mo. 1211, 152 S.W.2d 165, was a passing case. The plaintiff who had been walking north on the right side of the pavement stopped and stood in the attitude of starting to cross the street and continued to watch cars coming from the north. The defendant's taxi approached from the south at a speed of 25 miles per hour and passed so close to the oblivious plaintiff that it hit his dinner bucket in his extended hand and knocked it into his face injuring him. Defendant saw the plaintiff in this position for 50 to 75 feet and the court held a case was made under the humanitarian rule. In the instant case Mr. Masters was not in the attitude of crossing the road and the defendant was slowing down and did stop in the usual position for picking up a passenger. Contrary to plaintiffs' contention Mr. Masters was not in imminent peril from the time the defendant turned the corner onto Main Street and during the approach of defendant's vehicle.

It is doubtful if there is substantial evidence that Mr. Masters came into imminent peril at any time, but, if he did, the evidence would not support a finding that it arose prior to the time the post of the windshield was even with Mr. Masters and he turned toward and, presumably, into the automobile since the evidence establishes that the car did not move toward him. As the trial court observed during the argument on the motion for a directed verdict, "cars don't move sideways." There is nothing in the record to indicate that this one did. As Mr. Masters turned toward the car the defendant was braking to a stop and did stop within one foot thereafter. There is no evidence or permissible inference that the defendant .had the present ability with the means at hand to avoid the injury after Mr. Masters turned toward the automobile. McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, 707(3); Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 779(10); Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 422(5); Bafaro v.

Pezzani, Mo.App., 376 S.W.2d 631, 634(5); Lane v. Wilson, Mo.App., 390 S.W.2d 943, 949(8); Kirks v. Waller, Mo., 341 S.W.2d 860, 865(6).

 The constitutive elements of an action under the humanitarian doctrine must be proved by the plaintiff as in any other negligence. case. The evidence must have substantial probative value and be sufficient to enable a jury to render a verdict without resorting to surmise, speculation or guesswork. Kirks v. Waller, Mo., 341 S.W. 2d 860, 863(3); Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787(1); Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 499(4, 5); Davis v. McClanahan, Mo.App., 262 S.W.2d 65, 68(2). As previously indicated there was a failure of proof that the defendant had the ability to avoid the accident after Mr. Masters can be said to have been in a position of imminent peril. The trial court properly directed a verdict for the defendant.

The judgment is affirmed.

All of the Judges concur.